TREAT and another, Respondents, vs. HILES, Appellant.

*November 18, 1891 — February 23, 1892.*

*Contracts: Partnership: Termination: Estoppel: Damages: Prospective profits.*

1. It was agreed between the parties that defendant should purchase in his own name lands upon which plaintiffs had discovered a valuable quarry, that he should advance funds to open and develop the quarry, and that he should give plaintiffs one half of the net profits so long as the quarry could be profitably worked.    *Held*, that defendant could not terminate the contract before the quarry was exhausted, without becoming liable to plaintiffs for damages.

2. The defendant terminated the contract by selling the quarry to other persons before it was exhausted, and plaintiffs thereupon sold to said purchasers their interest in a corporation organized to build a railway from the quarry.    *Held*, that such sale by plaintiffs did not

---

Treat and another vs. Hiles.

---

estop them from asserting that defendant's sale of the quarry was a
violation of the contract.

3. For such wrongful termination of the contract by defendant, plaint-
iffs are entitled to recover damages upon the basis of the prospec-
tive profits of the quarry, to be assessed by the jury according to
their best judgment, based on the evidence.

APPEAL from the Circuit Court for *Waukesha* County.
This action was brought by *Curtiss M. Treat* and *Melvin
A. Hoyt* against *George Hiles* to recover damages for the
breach of an alleged contract between the parties to open
and work a certain stone quarry on joint account.   The
case was here in 1887, on an appeal from an order sustain-
ing a general demurrer to the complaint, and is reported
in 68 Wis. 344.   The opinion by Mr. Justice ORTON contains
a statement of the alleged contract, as set out in the com-
plaint, to which should be added that it is further averred
in the complaint that the contract was to continue " so long
as said quarry might last, and so long as any profit might
or could be realized thereupon."   It was held on such ap-
peal that the complaint states a cause of action.   After the
cause had been remitted to the circuit court, the defendant
answered, substantially, a general denial.   The cause was
tried. and a special verdict returned therein, consisting of
answers to fifty-three questions of fact submitted to the
jury.   The circuit court modified some of the findings, and
awarded a new trial of the question of damages alone, the
jury having assessed the same at $1,000, which the court
disapproved.   An appeal from the order in that behalf re-
sulted in the reversal of the order, and the circuit court was
directed to grant a new trial of all the issues upon request
of either party.   75 Wis. 265.

The cause has been again tried, and on such trial the jury
returned a special verdict in the form of questions and an-
swers as follows:

"1. Did the defendant, in the fall of 1885, agree with

plaintiffs to purchase the Saunders farm and take the title thereto in his own name, and to advance such moneys as might be required to pay for the same, not exceeding $12,000, and such moneys as might thereafter be required to open and develop the quarry on said farm, if, upon examination of the property with the plaintiffs, he (*Hiles*) was satisfied with its appearance, and would give the plaintiffs one half of the net profits so long as the quarry could be profitably worked? Yes.

"2. Was there any other condition in the contract than that embraced in the last question? Yes.

"3. If you answer the last question in the affirmative, was that condition that defendant should test the quarry and be satisfied? No.

"4. How many cords of stone are there in the twenty-two acres of land adjacent to the place where the quarry is being worked, computed from the present level of the ground to the top of the hill? Not less than 50,000 cords.

"5. How far below the level of the ground under said twenty-two acres does the stone extend? Not less than twenty feet.

"6. What proportion of the stone is merchantable? One half.

"7. Can this quarry be worked at a profit? Yes.

"8. What would be the average expense per cord to quarry and load upon the cars the different varieties of the stone in this quarry? $10.82.

"9. What would be the average net profit per cord on the different varieties of stone in said quarry delivered at Milwaukee? $11.22.

"10. How much at Chicago? $14.50.

"11. Has said quarry been worked at a profit for the past three years? Yes.

"12. At what sum do you assess the damages of the plaintiffs? $20,000."

The court denied a motion of defendant for a new trial, and the motion of plaintiffs for judgment for a much larger sum than was so assessed, and ordered judgment for plaintiffs for $20,000 pursuant to the verdict. Judgment was entered accordingly, from which the defendant appeals to this court.

For the appellant there was a brief by *Rose & Bell*, of counsel, and oral argument by *D. S. Rose* and *John W. Cary.* They contended, *inter alia*, that only those damages could be recovered which resulted *necessarily*, immediately, and directly from the breach of the contract. *Taylor v. Bradley*, 4 Abb. App. Dec. 363; *Rhodes v. Baird*, 16 Ohio St. 580; *Bergen v. New Orleans*, 35 La. Ann. 523; *Jones v. Nathrop*, 7 Colo. 1; *Howe Mach. Co. v. Bryson*, 44 Iowa, 159; *White v. Miller*, 71 N. Y. 133; *Hadley v. Baxendale*, 9 Exch. 341; *Pittsburg C. Co. v. Foster*, 59 Pa. St. 365; *Adams Exp. Co. v. Egbert*, 36 id. 364. Cases in which prospective profits are sought to be recovered may be classified as follows: (1) Profits that would *certainly have resulted*, either directly, or collaterally when the party had notice of the collateral conditions, may be recovered. *U. S. v. Behan*, 110 U. S. 345; *Royalton v. R. & W. Turnp. Co.* 14 Vt. 324; *Wolcott, J. & Co. v. Mount*, 36 N. J. Law, 262; *McAndrews v. Tippett*, 39 id. 111; *Richmond v. D. & S. C. R. Co.* 40 Iowa, 273; *S. C. 33 id. 486; *McHose v. Fulmer*, 73 Pa. St. 365; *Masterton v. Brooklyn*, 7 Hill, 61; *Alexander v. Bishop*, 59 Iowa, 572; *Atkinson v. Morse*, 57 Mich. 276; *Petrie v. Lane*, 58 Mich. 527; *Prior v. Wilson*, 8 Weekly Rep. 260, 11 Cent. L. J. 62; *Booth v. Spuyten Duyvil R. M. Co.* 60 N. Y. 493; *Nilson v. Morse*, 52 Wis. 255; *Nash v. Howie*, 59 id. 384; *Jones v. Call*, 96 N. C. 337, 60 Am. Rep. 416. (2) When it is uncertain whether there would be profits; or when they can only be computed and ascertained by guess or speculation, or imagined; or when they are dependent on contingencies, such as competition

in business, supply and demand, the condition of the money market, availability of labor, strikes, lockouts, the adoption or rejection of labor-saving devices, and like uncertain and unreliable considerations,— in such cases prospective profits cannot be considered as an element of damages. 2 Wait, Act. & Def. 454; *Wolcott, J. & Co. v. Mount,* 36 N. J. Law, 271; *Allis v. McLean,* 48 Mich. 428; *Howard v. S. & B. Mfg. Co.* 139 U. S. 199; *Bean v. Carlton,* 58 Hun, 611; *Rhodes v. Baird,* 16 Ohio St. 580; *Abbott v. Gatch,* 13 Md. 315, 71 Am. Dec. 635; *Green v. Williams,* 45 Ill. 206; *Olmstead v. Burke,* 25 id. 86; *Taylor v. Maguire,* 13 Mo. 517; *Giles v. O'Toole,* 4 Barb. 261; *Wilson v. L. & Y. R. Co.* 9 C. B. N. S. 632; *Frazer v. Smith,* 60 Ill. 147; *Howe Mach. Co. v. Bryson,* 44 Iowa, 159; *Griffin v. Colver,* 16 N. Y. 490; *Newbrough v. Walker,* 8 Gratt. 16; *Rankin's Appeal,* 16 Atl. Rep. (Pa.), 88; *Coweta Falls M. Co. v. Rogers,* 19 Ga. 416; *Oldham v. Kerchner,* 79 N. C. 106; *Bridges v. Lanham,* 14 Neb. 369; *Freeman v. Clute,* 3 Barb. 426; *Rogers v. Bemus,* 69 Pa. St. 432; *Skinner v. Tinker,* 34 Barb. 333; *Brigham v. Carlisle,* 78 Ala. 243; *Culver v. Hill,* 68 id. 66; *Burton v. Holley,* 29 id. 318; *Higgins v. Mansfield,* 62 id. 267; *Muldrow v. Norris,* 2 Cal. 74; *Yonge v. P. M. S. S. Co.* 1 id. 353; *Stern v. Rosenheim,* 67 Md. 503; *Beck v. West,* 91 Ala. 312.    Another class of cases in which profits have been allowed in the measure of damages, are those brought to recover for the loss of the prospective profits of an established business or trade.    But the distinction between such cases and those in which no business has been established, is recognized.    *Poposkey v. Munkwitz,* 68 Wis. 335; *Chapman v. Kirby,* 49 Ill. 211; *Shepard v. Milwaukee G. L. Co.* 15 Wis. 329; *Gates v. N. P. R. Co.* 64 id. 71; *Kenny v. Collier,* 8 S. E. Rep. (Ga.), 60; *Red v. Augusta,* 25 Ga. 386; *Townsend v. Nickerson W. Co.* 117 Mass. 503; *Montgomery Co. U. A. Soc. v. Harwood,* 126 Ind. 440; *Darwin v. Potter,* 5 Denio, 306; *Rawson v. Pratt,* 91 Ind. 9; *West-*

*ern G. R. Co. v. Cox,* 39 Ind. 260; *Blair v. Kilpatrick,* 40 id. 312; *Terre Haute v. Hudnut,* 112 id. 542.

*N. S. Murphey,* for the respondents, argued, among other things, that as to the damages the court below strictly followed the rule established by this court in *Flick v. Wetherbee,* 20 Wis. 392; *Salvo v. Duncan,* 49 id. 151; *Nilson v. Morse,* 52 id. 240; *Cockburn v. Ashland L. Co.* 54 id. 619; *Hill v. Palmer,* 56 id. 123; *Nash v. Hoxie,* 59 id. 384; *Jones v. Foster,* 67 id. 296; *Treat v. Hiles,* 68 id. 344; *Poposkey v. Munkwitz,* id. 330; and *Cameron v. White,* 74 id. 425. The following are a few of the many authorities from other courts which may be referred to as holding the same identical doctrine established by this court in respect to the allowance of damages for future profits, whether contracted for specifically as such or inferentially to be awarded as the necessary effect of the contract made by the parties: *U. S. v. Behan,* 110 U. S. 343; *Wakeman v. W. & W. Mfg. Co.* 101 N. Y. 205; *Bagley v. Smith,* 10 id. 489; *Taylor v. Bradley,* 39 id. 129; *Dennis v. Maxfield,* 10 Allen, 138; *Simpson v. L. & N. W. R. Co.* L. R. 1 Q. B. Div. 274; *Jaques v. Millar,* L. R. 6 Ch. Div. 153; *White v. Miller,* 7 Hun, 427, 71 N. Y. 118, 78 id. 393; *Mitchell v. Reid,* 84 id. 556; *Danolds v. State,* 89 id. 36; *Hoy v. Gronoble,* 34 Pa. St. 8; *Garsed v. Turner,* 71 id. 56; *McNeill v. Reid,* 9 Bing. 68; *Fletcher v. Taylor,* 17 C. B. 21. See, also, *Hewitt v. John Week L. Co.* 77 Wis. 548; *Masterton v. Brooklyn,* 7 Hill, 61; *Schell v. Plumb,* 55 N. Y. 592; *Etherington v. P. P. & C. I. R. Co.* 88 id. 641; *Houghkirk v. D. & H. C. Co.* 92 id. 219; *Warren C. & M. Co. v. Holbrook,* 118 id. 586; *Dart v. Laimbeer,* 107 id. 664–669; *Reed v. McConnell,* 101 id. 276; *Fox v. Harding,* 7 Cush. 516; *Blair v. Laflin,* 127 Mass. 518; *Morgan v. Hefler,* 68 Me. 131; *Myers v. Y. & C. R. Co.* 2 Curt. C. C. 28; *Philadelphia, W. & B. R. Co. v. Howard,* 13 How. 307–344; 1 Suth. Dam. 113; 5 Am. & Eng. Ency. of Law, 82, and cases cited; *Passenger v. Thorburn,*

34 N. Y. 634; *Jones v. George*, 61 Tex. 345; *Richardson v. Chynoweth*, 26 Wis. 659; *Hammer v. Schoenfelder*, 47 id. 459.

The following opinion was filed December 15, 1891:

LYON, J. The testimony is very voluminous, filling (including exhibits) nearly 500 pages of the printed case. It is not materially different from the testimony given on the former trial. Much of it is the same. It cannot reasonably be expected that we should make any extended statement or go into any analysis or elaborate discussion of it. It has been examined with care, and it must suffice that its scope and character are herein stated in a very general way.

On the trial, as on the former trial, the testimony was addressed to the questions of fact as to whether the contract set out in the complaint was entered into by the parties, and, if so, the amount of damages sustained by plaintiffs by reason of the breach thereof by defendant. The special findings may all be classified under these two general heads. Certain material facts in the case, which are not included in the special verdict, were proved by the uncontradicted evidence, and were omitted from the special verdict for that reason. The court so stated to the jury. Some of these omitted facts will be mentioned later in this opinion.

I. We find sufficient testimony in the bill of exceptions to support the finding that the contract specified in the first finding of the special verdict was entered into by the parties. It is positively testified to by both plaintiffs, and it was competent for the jury to believe their testimony, and to predicate upon it their verdict in this behalf. Their testimony was subjected to searching analysis and sharp criticism by the learned counsel for defendant in their argument here, as it doubtless was in the argument of the case to the jury. Yet the plaintiffs' testimony as to the making of the contract and the terms thereof remains, and the jury be-

lieved it true.    The verdict in that behalf is conclusive of the question.

The verdict includes the proposition that the contract entitled the plaintiffs to one half the net profits of the quarry so long as it could be profitably worked.    This, of course, measures the duration of the contract for working the quarry on joint account.    Counsel claim that this court held in 68 Wis. 344, that the contract was for no definite time, and that it only created a partnership at will, which either party might terminate at pleasure without incurring any liability to respond in damages to the other party for so doing.    This claim rests entirely upon a sentence in the opinion which reads thus: " It was a partnership that might be dissolved by many contingencies, and the time of its continuance was unlimited."    An examination of the opinion negatives any such construction of the above observation. Mr. Justice Orton was then considering the proposition that the contract, which was not reduced to writing, was void under the statute of frauds, because not to be performed within one year, and he was demonstrating that it was not impossible it should be performed in one year. The above quoted remark was merely to show that the contract did not, by its terms, extend the period of performance beyond the year, but was unlimited only in that it contained no specific date for its performance.    The duration of the contract in any other sense was not involved in the appeal, and was not considered.

Counsel also claimed that there is proof in the case showing that plaintiffs consented that defendant might sell the quarry to others.    We fail to find any such proof.    On the contrary, it appears that plaintiffs protested against such sale as being a violation of their contract with defendant. Stress is also laid upon the fact that after defendant refused to execute his contract with them (as hereinafter stated) the plaintiffs sold to the persons who became the purchas-

ers of the quarry their interest in a corporation which they and others (including the defendant) had organized to construct a railroad from the quarry to the line of the Wisconsin Central Railway, a distance of a little less than two miles. We find no element of estoppel in such sale. The circuit judge was of the same opinion, and so instructed the jury.

In the second special finding the jury found that there were other conditions in the contract of the parties, not mentioned in the first finding, but what those conditions were is not found. The fact that the contract was made being established, the undisputed evidence proves that the plaintiffs were to devote their whole time to carrying on the enterprise of working the quarry, and this doubtless is one of the "other conditions in the contract" referred to in the second finding. The undisputed evidence also proves that after defendant had purchased the quarry, and after a foreman had been employed, and certain tools, etc., with which to open the quarry had been purchased by the parties, the defendant refused to go on with the contract, and terminated the same without lawful cause therefor. The above facts are verities in the case, and it is not essential that they be found in the verdict. The third finding of the jury demonstrates that the contract was absolute and unconditional, and the special verdict is not subject to the criticism made upon the first verdict when the case was here on a former appeal. 75 Wis. 265.

II. The only remaining question is, What is the proper rule of damages? This question was most ably and exhaustively discussed by the respective counsel in their arguments, and numerous authorities were cited by them in support of their respective propositions. Indeed, the arguments seem to cover the whole field of the law on the subject of allowing prospective profits in actions to recover damages for breaches of certain contracts. To review all these au-

thorities would require the writing of a treatise. This we are not required, and ought not to be expected, to do. The reporter will, however, preserve the citations for the use and convenience of the bench and bar. On this subject the learned circuit judge, after expressing the difficulty he encountered in satisfying his own mind of the correct rule of damages in the case, instructed the jury as follows: "What would be the usual, ordinary profits of this quarry if the contract had been carried out? It is a difficult question for you to answer. Difficult because there are so many elements entering into such a thing which are uncertain or liable to change. Prices fluctuate, the price of labor, the price of stone, railroad freights, the demand for stone, and all that. But some, not the same, but similar to some extent, uncertainties exist in all the affairs of life. . . . But you are called upon simply to exercise your judgment, founded upon the evidence in the case. You are not to conjecture, you are not to guess, but to draw a reasonable, safe conclusion from the evidence in the case, as it has been developed on this trial. Where you can stop I shall leave to you. There is a point in the future somewhere — whether it be three years, or five years, or fifteen years, or twenty-five years, I don't know — where it would be unsafe for the court or jury to say that the given profits of a farm, a quarry, a mine, or a mercantile enterprise would be a certain sum. In my judgment the rule is to assess these damages at what those profits would be for such a length of time as you can feel, acting under your oaths and the obligations you have assumed, from this testimony, you can say would be reasonably safe and prudent. There is nothing in the future that is certain to any of us, or to any enterprise or business in which we may engage. But you must determine those matters, exercise your common sense, common observation, and experience in the affairs of life, and say, in answering this question, considering all the evi-

dence, and fix in your answer to the question: What sum do you assess the damages of the plaintiff?"

The contract under consideration was one for future profits. None having been earned when the defendant terminated the contract, unless plaintiffs may recover prospective profits they can recover nothing more than nominal damages. This would be unjust. Manifestly the case is a proper one, according to all of the authorities or at least the great weight of authority, for assessing damages on the basis of prospective profits. Of course the amount of these cannot be certainly determined. But the same element of uncertainty inheres in the assessment of damages in other classes of actions *ex contractu* and in many actions *ex delicto*. All the jury can do is to assess the damages according to their best judgment, based upon the testimony. It is probably true that in estimating the prospective profits of a contemplated business there is a tendency to place them too high, and it is very proper that the court should caution juries against such tendency. In this case the estimate of prospective profits was not entirely conjectural or speculative. Mr. Hadfield, the purchaser of the quarry (or one of such purchasers), and who was working it when he testified, stated that from 1886 to the time of trial (which was in the summer of 1890) the prices of stone such as this quarry produced had not materially changed in the Milwaukee or Chicago markets, in which markets the output of the quarry was chiefly sold; that he expected or hoped to make $10,000 net profit out of the quarry in the year 1890, and more than that sum in 1891. The jury found on sufficient proof that the quarry had been worked at a profit for the three years next preceding the trial. The jury thus had a reasonably substantial and safe basis upon which to assess the value of prospective profits. The judge gave the jury very guarded and conservative instructions on the subject, and the sum at which the jury assessed the plaint-

iffs' damages shows that they heeded such instructions. They evidently concluded, under the charge, that it was safe to award damages for four years' prospective profits on the basis of the partly earned and partly estimated profits of 1890,— that is $10,000 per year,— and the assessment of damages is on that basis.  It seems to us that under the testimony the assessment is eminently just to all parties; at least that the defendant has no valid reason to complain of it.

It is believed the foregoing observations cover the whole case.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied February 23, 1892.