Guetzkow Brothers Co. vs. A. H. Andrews & Co.

GUETZKOW BROTHERS COMPANY, Respondent, vs. A. H. ANDREWS & COMPANY, Appellant.

*January 9 — January 28, 1896.*

*Sale of chattels: Breach of contract: Measure of damages: Loss of profits on resale: Findings of fact, when set aside.*

1. When the vendor of goods is informed that the purchase is made to enable the vendee to fulfill a contract which he has theretofore made with a third person, and such vendor furnishes the goods, but not according to contract, and there is no market price for such goods, and the purchaser furnishes such goods to such third person, but is not able to recover of him the price stipulated in the contract with such third person, by reason of the breach of the contract committed by such vendor,— in determining the damages for such breach such vendor is bound by the price his vendee was to receive from such third person, whether such price was communicated to him at the time of the making of the contract with his vendee or not, unless the price was such as to yield an extraordinary and unusual profit, which could not reasonably be presumed to have been in contemplation by him at the time he made his contract; and in such a case he would not be bound beyond such sum as would yield a reasonable and fair profit to his vendee.

Guetzkow Brothers Co. vs. A. H. Andrews & Co.

2. Ordinarily, the contract price between the vendee and the third person in such case would, presumptively, be held to be a reasonable price; but if the facts are such as to show that such price would yield an extravagant or extraordinary profit, the vendor will not be bound by it, in the absence of evidence of previous knowledge; and in order to assess the damages the court must be put in possession of sufficient evidence to enable it to arrive at a conclusion in respect to what would amount to a reasonable profit on the transaction.

3. To warrant setting aside findings of fact as against evidence, it must appear that they are against the clear preponderance of the evidence.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

This action was brought by plaintiff to recover $1,978, alleged to be due from the defendant for show cases and other articles manufactured for it, which articles it had contracted to furnish exhibitors at the World's Fair. The answer of the defendant contained a denial of liability, and set up as a defense that the articles were not constructed or furnished according to the contract, and were not reasonably worth the contract price, or as much as the payments that had been made. It counterclaimed for the amount of the overpayments, and also for damages, claiming as such damages the loss of profits it would have made if plaintiff had fully complied with the contract, and placing such damages at the difference between the price it agreed to pay plaintiff and the amount it was to receive from the exhibitors; the advance being from 100 to 150 per cent.

The case was tried by a referee, who found that the goods were all manufactured and furnished substantially in accordance with the contract, except in some small particulars, for which a rebate of the purchase price was allowed. The evidence shows that the goods were manufactured for a special purpose, that there was no market price for such goods, and that plaintiff knew, when it contracted with de-

Guetzkow Brothers Co. vs. A. H. Andrews & Co.

fendant, that it was under contract to furnish the goods to exhibitors at the World's Fair, and that the contract was made by it with plaintiff to enable it to carry out the contract previously made by it with such exhibitors. The findings of the referee were confirmed by the court, and judgment was entered in plaintiff's favor, from which this appeal was taken.

For the appellant there was a brief by *Cary & Cary*, and oral argument by *George. Cary*.

*F. C. Eschweiler*, for the respondent.

MARSHALL, J. There is no controversy but that the findings of fact warrant the judgment that was entered, and it seems clear that, waiving the question of whether they are supported by the evidence, in respect to the determination that the contract between the parties was substantially complied with, appellant is not entitled to prevail on this appeal unless the rule for which it contends — that is, that it is entitled to recover the loss of profits, amounting to from 100 to 150 per cent.— should have been adopted by the trial court. The evidence was taken on appellant's theory, but at the close of the trial was stricken out; the referee holding that the rule contended for would not be applied to the case. He said: " The decided weight of authority is in favor of the exclusion from consideration, on the question of damages, the profits the original contractor might have made under his contract; that such damages—possible profits—are uncertain, speculative, and too remote to affect the plaintiff, and the testimony in relation to the same should be excluded." Looking at this ruling in the light of the evidence and appellant's contention, we assume the court did not hold, or intend to hold, that lost profits are not recoverable in a proper case, but that the rule contended for by appellant could not be applied, and that the evidence did not tend to establish damages under any other rule. On this subject

the learned counsel for appellant say: "We say, frankly, that if, in the light of the facts of this case, the referee decided that proposition correctly, the judgment should be affirmed." So we may properly consider this subject at the outset in determining the case, and, in doing so, shall take into consideration the evidence that was stricken out. If, notwithstanding such evidence, the court could not, on the whole case, have allowed loss of profits as damages, then the error in striking out such evidence, if it was error, did not prejudice appellant; hence, does not constitute reversible error.

There is no controversy but that the difference between the contract price for the goods to appellant and what it was to receive was unusually large. To say that such increased price to the exhibitors was extraordinary in a superlative degree, would be fully justified. It also appears beyond controversy that respondent's officers knew, when the contract was made with appellant, that the goods were intended for a special purpose. They had reason to know that there was no established market price for such goods. They knew that defendant was under contract to furnish the goods to the exhibitors, but it does not appear that they had any notice of the contract price such exhibitors were to pay; and it is in the light of these facts that we must determine the question presented.

As stated, in effect, by this court in *Wright v. Mulvaney*, 78 Wis. 89, it is sometimes difficult to determine when the rule of prospective profits should be applied, and when not, and such determination must be largely governed by the special circumstances in each particular case; and, as often said by this court, in terms or in effect, such profits are at best conjectural and uncertain, and, when allowed, are likely to, or necessarily do, operate unjustly and oppressively. *Wright v. Mulvaney, supra; Pewaukee Milling Co. v. Howitt*, 86 Wis. 270; *Bierbach v. Goodyear R. Co.* 54 Wis. 208;

*Anderson v. Sloane*, 72 Wis. 566. Therefore, before the rule
should be applied to any given case, such case should be
brought clearly within the authorities on the subject, leav-
ing no reasonable controversy in respect to it. To be sure,
in this case the element of uncertainty, as the term is com-
monly used, was in some respects not present, because the
contract between the appellant and the exhibitors relieved
it in a measure of that difficulty; but uncertainty still re-
mained, quite prejudicial to respondent, in that it was not
known to its officers, at the time of the making of the con-
tract, that the price appellant was to obtain from the ex-
hibitors would yield an extraordinary profit. Where there
has been a previous sale, or where there has not, the funda-
mental principle to be observed is that the damages for the
breach complained of must be confined to such as may be
fairly considered to arise, according to the usual course of
things, from such breach, or such as may reasonably be sup-
posed to have been in contemplation of the parties at the
time of making the contract as the probable result of the
breach of it. *Hadley v. Baxendale*, 9 Exch. 341; *Cockburn
v. Ashland L. Co.* 54 Wis. 619. Hence, it is held that, in
order to make applicable the special rule of damages,— that
is, loss of profits,— it must be shown that the special cir-
cumstances, by reason of which the party invokes such ap-
plication, were brought clearly home to the knowledge of
both parties at the time the contract was made, and it is
only applicable in so far as such circumstances were so
brought home.

All rules for the assessment of damages for the breach of
contracts are supposed to be founded upon principles of
natural justice, the intention being to keep strictly within
such principles. It is on that ground that the general rule
established for the assessment of damages for the breach of
an executory contract to sell and deliver property, *i. e.*, the
difference between the contract price and the market value

at the time and place of the delivery, in order to work out natural justice in case of special circumstances, must necessarily be broadened out to fit such circumstances, but only when such special circumstances are shown to have been brought home to the knowledge of both parties at the making of the contract. The leading case of *Hadley v. Baxendale*, 9 Exch. 341, states the rule applicable to a case of this kind, and it has been repeatedly approved by this court. It is thus stated, in the language of ANDERSON, B.: "Where two parties have made a contract, which one of them has broken, the damages which the other ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered as either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to defendants, and thus known to both parties, the damages resulting from the breach of such contract which they would reasonably contemplate would be the amount of the injury which would ordinarily follow from a breach of contract under these special circumstances, so known and communicated; but, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great majority of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for a breach of contract by special terms as to the damages in that case." To the same effect are *Borries v. Hutchinson*, 18 C. B. (N. S.), 445; *Messmore v. N. Y. S. & L. Co.* 40 N. Y. 422;

*Booth v. Spuyten Duyvil R. M. Co.* 60 N. Y. 487; *McHose v. Fulmer,* 73 Pa. St. 365; *Poposkey v. Munkwitz,* 68 Wis. 322; *Cockburn v. Ashland L. Co.* 54 Wis. 619, and substantially all the authorities on the subject; and if all were collated no more light could be thrown on the general principle involved.

But the question arises whether the price to the first vendee must be communicated to the second vendor in order that he may be charged with the special rule of damages at the suit of his vendee, in case of a breach on the part of such second vendor; and upon the precise point here presented the authorities are not numerous. In *Cockburn v. Ashland L. Co.* 54 Wis. 619, Mr. Justice LYON said: " To bind the defendant by a price stipulated for on a resale, he must have had notice of such resale when the contract was made, though, perhaps, not of the contract price." But it must be observed that in the case then under consideration the circumstance of extraordinary profits was not present; that is, the evidence did not disclose but that the profits were such as were reasonable and might reasonably have been in contemplation by both parties to the·transaction when the contract was made.

The question has been many times considered in the courts of England, and may be said to have been long settled, that the second vendor is .only bound by the terms of the contract with the second vendee so far as communicated to him or he had reasonable ground to know the same by inference from facts brought to his knowledge. All of the cases refer to and are founded upon the general principle laid down in *Hadley v. Baxendale,* 9 Exch. 341. In *Borries v. Hutchinson,* 18 C. B. (N. S.), 445, these circumstances were present: There was a Russian contract between the plaintiff and a third person as his vendor. The fact of the contract was made known to defendant, but not its terms. He knew the goods were to be delivered in Russia, to be trans-

ferred there by rail. He was familiar with the fact that freight rates and insurance rates were higher there in winter than in summer. He agreed to deliver the goods in summer, but did not deliver until later, so that the winter rates of freight and insurance applied. It was held that he was bound to know, under the circumstances, at the time he made the contract, that the late delivery would necessitate a loss on the plaintiff by reason of increased freight and insurance charges. Hence, he was charged with such loss, because so much of the contract was made known to him as charged him with knowledge that the loss by increased freight and insurance rates would naturally follow such late delivery. Plaintiff was liable to his Russian vendee for certain penalties for failure to deliver the goods at the time agreed upon; but defendant was not held liable for such penalties, because knowledge of the terms of the Russian contract in that regard was not brought home to him, nor facts that would reasonably have suggested that element of probable damages in case of a breach. To the same effect are *Elbinger Actien-Gesellschafft v. Armstrong*, L. R. 9 Q. B. 473; *Grebert-Borgnis v. Nugent*, 15 Q. B. Div. 85. In this last case there was a contract between plaintiff and a third person, as his vendee, for goods of a particular kind, which contract was made known to him. The contract was the same as between plaintiff and defendant, except as to price. The latter contract was broken. There was no market price for the goods. There was no question but that the difference in price was no more than a reasonable profit. He was held liable for such profits as one of the natural consequences of the breach of so much of the contract as was made known to him. Brett, M. R., stated the rule thus: "It seems to me, according to what has been decided, that the original vendor in such a case is only liable, in case of a breach, for the natural consequences of so much of the subcontract as was made known to him.

If he were told, for instance, that the contract was that, if I do not supply my purchaser with the goods which I am ordering from him, my vendor, I shall have to pay my purchaser £4 a ton for every ton which I do not deliver; then, if there be a breach of the contract, the original vendor would have to pay the £4 a ton. But, supposing there was in the subcontract between myself and my purchaser, not only that I should pay £4 a ton, but, besides, that I should be liable to a penalty of £5 a day; although that is in the subcontract, yet if that part of it was not made known to the original vendor, then for that reason, and because it is not a natural consequence of his bargain, he would not be liable to pay the penalty of £5 a day. It seems to me that the cases establish that the original vendor is to be liable to so much of the subcontract as was made known to him, but only to that extent." To the same effect are the American authorities, all substantially adopting the rule of *Hadley v. Baxendale.* They are numerous, and it is sufficient to refer to *Poposkey v. Munkwitz,* 68 Wis. 322, and *Cockburn v. Ashland L. Co.* 54 Wis. 619, in our own court.

Differences may be found in the interpretations which courts have put on the rule of *Hadley v. Baxendale;* but they generally hold that the price in the first contract need not be communicated, as intimated in *Cockburn v. Ashland L. Co.,* in this court. They proceed upon the principle, all of them, that knowledge of the first contract is sufficient to bring home to the second vendor, as an inference of fact, knowledge that the price in the first contract is sufficiently in advance of the price in the second contract to allow a reasonable profit to the second vendee. We venture to say that no case can be found, where the price was out of all proportion to anything that might be considered reasonable in order to give a fair profit, that the court has held that such unreasonable profits may be recovered as damages, where knowledge of such unreasonable profits, as a special

circumstance, was not known to both parties at the time of the making of the contract. The most that is held in *Booth v. Spuyten Duyvil R. M. Co.* 60 N. Y. 487, cited with confidence by appellant, is that the second vendor is bound by the price his vendee is to receive, unless it is shown that such price is extravagant or of an unusual or exceptional character. That is as far as the New York courts have gone. CHURCH, C. J., said: "There is considerable reason for the position that, where the vendor is distinctly informed that the purchase is made to enable the vendee to fulfill a previous contract, and he knows there is no market price for the article, he assumes the risk of being bound by the price named in such previous contract, whatever it may be." But no such rule was adopted, and no case was there cited to support such a rule, and we are unable to see wherein such reason exists. It could only be consistent with the theory that the law aims at complete compensation for all losses, including gains prevented as well as losses sustained, without the important condition, requisite to give the rule the basic foundation upon which all rules for the assessment of damages are supposed to rest, that of natural justice, which condition must always be considered in order that the true rule may be correctly stated,— that is, that the damages must be such as can be fairly supposed to have entered into the contemplation of both parties.

Further discussion of the subject might be interesting but is not necessary to a decision of this case; and the only excuse for extending it thus far is the fact that it does not appear that the precise question here presented has heretofore been decided by this court. We state the conclusion arrived at thus:

When the vendor is informed that the purchase is made to enable the vendee to fulfill a contract which he has theretofore made with a third person, and such vendor furnishes the goods, but not according to contract, and there is no

market price for such goods, and the purchaser furnishes such goods to such third person, but is not able to recover of him the price stipulated in the contract with such third person, by reason of the breach of the contract committed by such vendor, in determining the damages for such breach such vendor is bound by the price his vendee was to receive from such third person, whether such price was communicated to him at the time of the making of the contract with his vendee or not, unless the price was such as to yield an extraordinary and unusual profit, which could not reasonably have been presumed to have been in contemplation by him at the time he made his contract. In such a case he would not be bound beyond such sum as would yield a reasonable and fair profit to his vendee. Ordinarily, the price to the first vendee would, presumptively, be held to be a reasonable price; but if the facts in any given case are such as to show such price to yield an extravagant or extraordinary profit, the second vendor will not be bound by such price, in the absence of evidence of previous knowledge, as before stated; and, in order to assess the damages, the court must be put in possession of sufficient evidence to enable it to arrive at a conclusion in respect to what would amount to a reasonable profit on the transaction.

It follows from the foregoing that there was no evidence before the referee by which he could have assessed in plaintiff's favor damages for loss of profits for the breach of the contract between it and the defendant, if there was a breach.

After a careful examination of the evidence, we are unable to conclude that the trial court erred in refusing to set aside the referee's findings of fact on the question of whether the contract was substantially complied with or not. Under repeated decisions of this court, to warrant setting aside findings of fact as against evidence, it must appear that they are against the clear preponderance of the evidence. *Briggs v. Hiles*, 87 Wis. 438; *Bacon v. Bacon*, 33 Wis. 147; *Lord*

*v. Devendorf*, 54 Wis. 491; *Messersmith v. Devendorf*, 54
Wis. 498. Moreover, it is doubtful whether the bill of ex-
ceptions is sufficiently certified to enable the court to review
the question of whether the evidence supports the findings
or not.

It follows, from the foregoing, that the judgment of the
superior court should be affirmed.

*By the Court.*— The judgment of the superior court is af-
firmed.