KELLEY, MAUS & COMPANY, Respondent, vs. LA CROSSE CARRIAGE COMPANY, Appellant.

*November 20—December 11, 1903.*

*Contracts: Breach: Measure of damages: "Lost use of factory:" Trial: Evidence: Pleading: Direction of verdict.*

1. Where plaintiff contracted to deliver to defendant at a specified date certain vehicle springs, but failed to deliver any except a very small quantity until months after the contract date, if defendant, upon ascertaining the breach, with ordinary diligence could have promptly obtained springs such as those specified in the contract in the open market, he can recover, as general damages, the difference between the price at which he could have so obtained them and the contract price, together with such special damages as he must nevertheless have suffered, including necessary expenses in finding and procuring other springs, or in his efforts, consistent with reasonable prudence and diligence, to expedite delivery of the contract springs.

2. Where plaintiff contracted to deliver to defendant by an agreed date certain vehicle springs which had to be manufactured before they could be furnished, and defendant relied on plaintiff's frequent assurances that the springs would be shipped soon, and probably earlier than the springs could be manufactured elsewhere, plaintiff cannot complain because defendant omitted efforts to buy springs which had to be manufactured before furnished, if such would be the conduct of ordinarily prudent persons under those circumstances.

3. In such case, if it appeared that springs, such as defendant contracted for, were not purchasable in the open market, or were of designs specially adapted for defendant's vehicles and obtainable only by special order, and that, by plaintiff's failure to deliver at the agreed time, defendant was prevented from producing the number of vehicles which, but for plaintiff's

delay, defendant's factory would, with reasonable certainty, have produced; that defendant, with reasonable certainty, would have been able to have sold such output during the then current season, and that plaintiff had knowledge of such facts with reference to defendant's business, or of the vehicle manufacturing business generally, that plaintiff as a reasonable man should have contemplated such injury might probably result from such breach,—then defendant would be entitled to recover the value of the lost use of defendant's whole establishment as measured by comparison of its output according to its capacity under usual circumstances and its output as impaired by plaintiff's default, and in addition the expenses of reasonable efforts to expedite shipments under the contract, after plaintiff's default became apparent, and also the reasonable expenses of efforts to find and purchase springs from others to supply the place of those plaintiff failed to deliver on time, together with the increased cost of springs so purchased.

4. The rule that one who breaks a contract is liable to compensate the other party for all damages occasioned by the breach which might reasonably be expected to flow therefrom, does not require that the party breaking the contract should know in detail just what constitutes the loss, provided it be reasonable and within usual experience.

5. Plaintiff contracted with defendant, who had an established business as manufacturer of vehicles, to deliver at an agreed date certain vehicle springs for use in the manufacture of defendant's vehicles, but failed to do so until long after the agreed date, and long after the then current season of defendant's business closed. In an action for the contract price, defendant counterclaimed for damages to its business through such nondelivery. *Held*, that it was error to exclude evidence offered by defendant on its counterclaim on the following subjects:

(a) Evidence tending to prove even general knowledge on plaintiff's part of how the vehicle business was carried on, either in manufacturing, selling or obtaining the necessary supplies of material, and whether such knowledge was derivable from plaintiff's general familiarity with the vehicle business, or from facts communicated to plaintiff at or prior to the time of making the contract.

(b) Evidence of the custom of operating defendant's factory, tending to show the manner in which, and extent to which, non-supply of springs interrupted its operation and diminished its efficacy.

(c) Evidence of the actual effect of absence of springs after the time at which the plaintiff was bound by contract to make delivery.

(d) Evidence of the capacity of the factory during the period of complete or partial interruption after the springs were due, but confined, however, to that which was ordinary and usual.

(e) Evidence tending to show that defendant had sufficient supply of material and parts of vehicles—other than springs—and of labor to keep its factory running to an extent not exceeding that which was usual and customary.

(f) Evidence to prove the fact of sales in excess of what the factory was able to produce with the shortage of springs, and for that purpose the orders received, either before or after the contract, were relevant, provided they did not exceed such as should have been within the reasonable contemplation of the parties.

(g) Evidence as to whether a market existed from which the defendant, with reasonable diligence, could have supplied itself promptly enough to have avoided other damage by merely paying some enhanced price for springs. In this is involved testimony that springs in quantity for factories, such as defendant's, were ordinarily obtainable only by contract long enough in advance to enable manufacture; also description of springs contracted for, to the extent of showing whether they were peculiar in any of their details, so as to be especially adapted to the types of vehicles manufactured by defendant.

(h) Evidence to show the diligence exercised by defendant, after it had reasonable ground to believe plaintiff would default in seasonable delivery, in the way of attempting to obtain springs elsewhere or to expedite the shipments from plaintiff's place of manufacture, and therein to show representations and promises on the part of plaintiff which might have induced defendant to forego efforts which it might otherwise have made.

(i) Evidence as to the expenses incurred by defendant in reasonably diligent efforts to obtain springs after it had ascertained plaintiff's default to furnish the springs within the time limit of the contract.

6. Plaintiff contracted with defendant, who had an established business as manufacturer of vehicles, to deliver, at an agreed date, certain vehicle springs for use in the manufacture of defendant's vehicles, but failed to do so. In an action for the contract price defendant counterclaimed for damages through such nondelivery. *Held*, that it was error to admit evidence offered by defendant on the following subjects:

(a) Evidence of the money value of the time of defendant's

Kelley, Maus & Co. v. La Crosse Carriage Co. 120 Wis. 84.

employees lost by reason of nondelivery of such springs. It is
not a proper specific element of recovery.

(b) Evidence of profits on the specific vehicles included in
orders received by defendant which it was unable to fill by·
reason of plaintiff's failure to furnish such springs.

(c) Letters between defendant and the company at whose
factory plaintiff was having the contract springs manufactured,
except as bearing on defendant's diligence.

(d) Evidence tending to show wilfulness of the plaintiff in
its breach of the contract.

7. Where evidence had been given of the receipt by defendant of
a letter from plaintiff, referred to in another letter received
in evidence, that it was lost, and that after diligent search it
could not be found, it is competent for defendant to prove its
contents by a witness who had seen it.

8. In such case, nothing appearing to show that such letter was
in plaintiff's custody, notice to plaintiff to produce it is not
essential.

9. In an action founded upon breach of contract motive cannot cre-
ate or increase liability for damages,

10. Defendant counterclaimed for damages for breach of a contract,
confessedly made at a certain date, in failure to supply the
contracted articles at the contract date. There was no allega-
tion of a contract later than or different from the one admitted
to have been made. *Held*, that evidence that at a later date
the parties entered into a new agreement, upon consideration
that defendant would refrain from supplying itself elsewhere,
and at that time there was communicated to plaintiff addi-
tional and specific information of the injury to defendant
which would follow a breach of the contract, was irrelevant.

11. It is error to direct a verdict where, on the evidence actually
admitted, the jury might have found facts to warrant some
recovery.

APPEAL from a judgment of the circuit court for La Crosse
county: J. J. FRUIT, Circuit Judge. *Reversed*.

Action for certain vehicle springs delivered by plaintiff to
defendant under contract dated December 17, 1900, for
1,000 sets of springs, regular shapes and sizes, at three and
one fourth cents per pound at La Crosse, with privilege of
twenty-five cent. additional to March 1, 1901, subject to reg-
ular extras for springs other than standard. Answer ad-
mitted contract, alleged counterclaim, first, for payment of

freight, and, second, for failure to deliver fifty-two sets of springs, and a third counterclaim alleging that plaintiff failed to deliver springs at the time required by the contract, or within a reasonable time, whereby the business of defendant's factory was greatly interrupted, it was put to great expense· in endeavoring to obtain springs in place of those which plaintiff should have delivered, and, generally, that it was subject to increased expense in operating its factory and in loss of time of employees by reason of want of springs, and that it lost many sales and the profits thereon, and also continuing loss of profits in its business, to the amount of $3,500. Defendant offered evidence that it was an old-established manufacturer of vehicles, having a factory at La Crosse with an output of approximately 6,000 vehicles per year; that plaintiff for many years had been engaged in the business of selling material, supplies, and parts of vehicles to such factories; that in conducting such business it was necessary to contract for supplies to meet the prospective requirements of the year's business; that the turning of the year occurred about July 1st; that the custom of such establishments was to sell vehicles by soliciting orders from dealers throughout the country, by traveling men and mail; that, having a contract for springs for 6,000 vehicles with a manufacturer designated as the Lewis Company, that company, in December, suffered destruction of its factory, whereupon defendant applied to the plaintiff for a supply of springs for the rest of that season's business, and the latter entered into the contract for the number therein specified. Defendant offered to prove the familiarity of the plaintiff with the method in which such business was done, and that it was informed, at the time of contracting, of the character of defendant's business, and of the fact that it had orders for a considerable number of vehicles. It was conceded that a reasonable time for the delivery of the springs was not later than about March 1, 1901; that the springs were not delivered, except a very small quan-

·tity of them, until the months of July, August, September, ·and November of that year. Defendant offered to prove the ·method of manufacture; that it had men, and all other material except springs, to have supplied its orders, both those which it had on hand in December at the time of the con-·tract, and those which it afterwards took; that it was delayed ·and prevented from filling many such orders of both classes ·wholly by reason of the delay in obtaining springs, and that its profits upon such orders were $5 per vehicle. It also ·offered to prove expenses for travel, etc., incurred in efforts ·to obtain springs, both from the plaintiff and from others ·also, after the plaintiff was in default, in order to diminish ·its loss; also the number of vehicles its factory would have ·produced but for want of the springs. The court excluded ·all these offers of proof, and ruled that no loss could be re-·covered upon orders which were not specifically communi-·cated to the plaintiff at the time of making the contract. At ·the close of the evidence the amount of the plaintiff's bill was ·agreed upon, and the amount recoverable upon the first and ·second counterclaims, and the jury were directed to find a verdict in favor of the plaintiff for its bill, less the amount ·on said first and second counterclaims, and to allow nothing ·to the defendant upon the third counterclaim. Upon such verdict judgment was rendered in favor of the plaintiff, from ·which the defendant appeals.

For the appellant there was a brief by *A. E. Bleekman,* ·and oral argument by *Mr. Bleekman* and *Mr. A. E. Bleek-·man, Jr.*

*Benjamin F. Bryant,* for the respondent

DODGE, J. The rule of law is general that he who breaks ·a contract is liable to compensate the other party for all damages occasioned by the breach, which might reasonably be expected to flow therefrom, under either ordinary circum-·stances, or peculiar circumstances of which the contractor is

informed at the time of contracting. Such damages are deemed to have been contemplated by the parties. *Hadley v. Baxendale,* 9 Exch. 341; *Griffin v. Colver,* 16 N. Y. 489; *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Guetzkow B. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119. Such liability is, of course, limited to damages which reasonable diligence of the other contracting party could not avert; hence results that, in case of failure to deliver a commodity purchasable in the open market, the general damages are limited to the difference between the market price and the contract price, for reasonable diligence will in such case obtain the contracted article at the market price. Another limitation upon special damages is that they must not be so uncertain and conjectural that they cannot, with practical safety, be ascertained. *Griffin v. Colver, supra; Shepard v. Milwaukee G. L. Co. supra; Wright v. Mulvaney,* 78 Wis. 89, 46 N. W. 1045; *Treat v. Hiles,* 81 Wis. 280, 50 N. W. 896. It is under this last limitation that prospective profits have in many cases been held not a proper measure of damages. If, however, the contemplated result of breach of a contract is to deprive the innocent party of profits, the defaulting party ought to compensate him therefor. Otherwise complete justice is not done, and the contract, which in ultimate analysis is the foundation of commerce, is robbed wholly or partially of its sanction. Only when the estimate of prospective profits involves such degree of speculation and uncertainty that it is likely to work injustice, rather than justice, should courts reject it if loss of profits is the result of the breach of the contract. *Richardson v. Chynoweth,* 26 Wis. 656; *Poposkey v. Munkwitz,* 68 Wis. 322, 32 N. W. 35; *Treat v. Hiles, supra; Shadbolt & B. I. Co. v. Topliff,* 85 Wis. 513, 55 N. W. 856; *Schumaker v. Heinemann,* 99 Wis. 251, 74 N. W. 785.

Attempting to apply these principles to the damages in the present case, some rules for ascertaining the damages recov-

erable become obvious: First, if the defendant, upon ascer-
taining the breach of this contract, with ordinary diligence,
that is, the diligence which the ordinarily prudent and dili-
gent man, or the great mass of mankind, under like circum-
stances, would have exercised, could have promptly obtained
springs such as those specified in the contract in the open
market, he can recover, as general damages, only the differ-
ence between the price at which he could so have obtained
them and the contract price, together with such special dam-
ages as he must nevertheless have suffered, such as necessary
expenses in finding and procuring such other springs, or in
his efforts, consistent with reasonable prudence and diligence,
to expedite delivery of contract springs. Of course, defend-
ant's acts in omitting to make purchases of springs which had
to be manufactured before they could be furnished must be
viewed in the light of all the circumstances, including the
frequent assurances from plaintiff that it would ship soon,
and probably earlier than the springs could be made else-
where. Plaintiff cannot complain because defendant relied
on such assurances and pretermitted efforts to buy elsewhere,
if such would have been the conduct of ordinarily prudent
persons under those circumstances. If, on the other hand,
the evidence shall disclose that springs such as defendant con-
tracted for were not purchasable in the open market, or were
of designs specially adapted for defendant's vehicles and ob-
tainable only by special order to some manufacturer, so that
they were not obtainable by such diligence as above defined,
and that, by plaintiff's failure to deliver at the time agreed,
defendant was prevented from producing from its factory the
number of vehicles which, but for the plaintiff's delay in de-
livering, that factory would, with reasonable certainty, have
produced, and that defendant, with reasonable certainty,
would have been able to sell all of such output during the
then current season, in such case it is clear the defendant
would have lost the difference between the cost of manufact-

ure and the net selling price of the vehicles it was so prevented from manufacturing and selling. Such sum, then, it
would be entitled to recover from plaintiff, if the latter had
knowledge of such facts with reference to defendant's business, or to the vehicle manufacturing business generally, that
its officers or agents, as reasonable men, should have contemplated that such injury might probably result from failure
to supply springs at the time required by the contract. This
is in effect allowing defendant the value of the use of its factory so far as that use was prevented by the breach of the contract, a method of measuring damages approved in *Hinckley.
v. Beckwith,* 13 Wis. 31. This method of measuring the damage is greatly more certain and comprehensive than that contended for by defendant, consisting of numerous elements.
Thus the attempt to prove that defendant had orders for certain vehicles of which a part were canceled because of its delays in filling them, and to predicate thereon damages to the
amount of the profits included in the price of the countermanded vehicles, involves the fallacious assumption that the
profit on any such vehicles left on hand has been lost. Any
such vehicles may afterwards have been, or may yet be, sold
to others at the same or greater price. Again, the attempt,
uncertain at best, to estimate the extent to which men in the
several departments of the factory were kept in idleness by
failure of seasonable delivery of springs, in order that their
lost time might be recovered as a specific element of damage,
is rendered wholly unnecessary, for that element will be included in the lost use of the factory and plant. Further, it
is notable that allowance of both the last mentioned elements
of damage would involve some measure of duplication. Still
further, it appeared that defendant diminished its force somewhat, both in its factory and in its selling department. Now,
if profits on countermanded orders were adopted, we see no
reason why savings resulting from reduction of expenses must
not be ascertained and deducted. That necessity disappears

if we ascertain the value of the lost use of the whole estab-
lishment as measured by comparison of its output according
to its capacity under usual circumstances and its output as
impaired by plaintiff's default. That, in the case of a long-
established business, past experience may establish with suffi-
cient certainty what would have been the course and results
of that business during a certain period of interruption, has
support from *Hinckley v. Beckwith, supra; Shepard v. Mil-
waukee G. L. Co.* 15 Wis. 318; *Shadbolt & B. I. Co. v. Top-
liff,* 85 Wis. 513, 55 N. W. 854; *Schumaker v. Heinemann,*
99 Wis. 251, 74 N. W. 785. It is also held that the events
which do in fact occur may serve to render sufficiently cer-
tain the damages, if they are not so extraordinary or beyond
expectation that they would not have been reasonably within
the contemplation of the contracting parties. *Treat v. Hiles,*
81 Wis. 280, 50 N. W. 896; *Guetzkow B. Co. v. A. H. An-
drews & Co.* 92 Wis. 214, 66 N. W. 119; *McCall Co. v. Icks,*
107 Wis. 232, 83 N. W. 300.

In addition to the element of damage already discussed,
denominated "lost use of factory," the defendant is also en-
titled to recover the expenses of any efforts made by it, con-
sistent with due and reasonable diligence, to avert such gen-
eral damages, in the way of certain journeys of officers and
employees to Racine and to Chicago to expedite the shipment
of springs under this contract, after plaintiff's default became
apparent; also in the way of some other trips to find and pur-
chase springs from others to supply the place of those plaintiff
had failed to deliver on time, together with the necessary in-
creased cost of any springs so purchased. This class of dam-
age results from the duty of the defendant already mentioned
to exercise due diligence to minimize its damages after learn-
ing that plaintiff would default. The expense of such efforts
is directly attributable to the breach of the contract, and,
being but the legal duty of defendant, was, of course, within
the contemplation of the parties at the time of contracting.

As we have already intimated, the liability of the plaintiff for any damages depends on whether it ought reasonably to have contemplated that damages of the general character might probably result from a failure to deliver springs at the time agreed. This does not require that it must have exact knowledge or information in detail. One who sells to a merchant necessarily contemplates that he will resell in the ordinary way, and at profits not unreasonably variant from the customary ones. One who sells to a manufacturer parts of vehicles, with a fixed time of delivery, must of necessity contemplate that their nondelivery at the time specified will inconvenience and disarrange the system of manufacturing. Especially is this true if he is familiar with the conduct of such factories generally. Hence it was entirely proper for defendant to have proved knowledge of the plaintiff's officers or agents as to the operation of such manufacturing plants, resulting either from its years of contact with such business, or from specific information given as to defendant's own situation or as to its sales, either made or expected, and the like, although the information did not extend to all the details, such as the persons to whom, or the prices at which, sales had been or were expected to be made. Factories are ordinarily operated at a profit, therefore a reasonable man may be assumed to contemplate that an interruption of the operation will cause loss to its owners. He need not know in detail just what loss, provided it be reasonable and within usual experience. *Guetzkow B. Co. v. A. H. Andrews & Co. supra.*

We have now indicated, at least generally, the elements which, in the light of the counterclaim and the evidence offered, may go to make up the damages recoverable under the third counterclaim, if the jury shall find the facts to warrant them. In so doing, we have by implication shown that very many of the exclusions of evidence assigned as error were erroneous, and we may dispense with discussion of most of

such assignments, which are very numerous. Such rulings on evidence resulted from primary errors as to the rule of damages and of the extent to which plaintiff must have had knowledge, in all the details, of the effects which its delay in delivery of springs would have on defendant. We may, however, briefly mention some of the classes of evidence which the court excluded:

As already said, the court should have admitted any evidence tending to prove even general knowledge on the part of the plaintiff of how the wagon business was carried on, either in manufacturing, selling, or obtaining the necessary supplies of material; whether such knowledge was derivable from its general familiarity with the wagon business, or from facts communicated to it at or prior to the time of the making of the contract.

Evidence of the custom of operating the factory, tending to show the manner in which, and extent to which, nonsupply of springs interrupted its operation and diminished its efficacy, was admissible.

Also evidence of the actual effect of absence of springs after the time at which the respondent was bound by contract to make delivery. This may involve the extent to which men were kept in idleness or the efficiency of their labor impaired, and the nonutility or lessened utility of any springs received from the plaintiff after the contract period, and especially after the alleged close of the season.

Also proof of the capacity of the shop during the period of complete or partial interruption after the springs were due, confined, however, to that which was ordinary and usual.

We are unable to discover the relevancy, however, of the money value of the time of men lost by reason of want of springs, as it is not a proper specific element of recovery.

Another class of evidence which was clearly admissible was that tending to show that defendant had sufficient supply

of materials and parts of wagons—other than springs—and
of labor to keep its factory running to an extent not exceed-
ing that which was usual and customary.

Also evidence to prove the fact of sales in excess of what
the factory was able to produce with the shortage of springs.
To this end the orders received, either before or after the con-
tract, were relevant, provided they did not exceed such as
should have been within the reasonable contemplation of the
parties.

We, however, do not deem admissible proof of the profits
on the specific vehicles included in these orders, for reasons
already stated.

Another class of evidence which, generally, should have
been admitted, was that bearing upon whether a market ex-
isted from which the defendant, with reasonable diligence,
could have supplied itself promptly enough to have avoided
other damage by merely paying some enhanced price for
springs.   In this is involved testimony which was offered
that springs in quantity sufficient for factories such as this
were ordinarily obtained and obtainable only by contract
long enough in advance to enable their manufacture; also
description of the springs contracted for, to the extent at least
of showing whether they were peculiar in any of their de-
tails, so as to be especially adapted to the types of vehicles
manufactured by defendant.

Evidence was also admissible to show the diligence exer-
cised by the defendant, after it had reasonable ground to be-
lieve that plaintiff would default in seasonable delivery, in
the way of attempting to obtain springs elsewhere or to ex-
pedite the shipments from plaintiff's place of manufacture,
and therein to show representations and promises on the part
of the plaintiff which might have induced it to forego efforts
which it might otherwise have made; as, for example, in the
release or partial release of its former contract with the Lewis
Company of Michigan.

Defendant should also be permitted to prove expenses incurred in such reasonably diligent efforts to obtain springs after it ascertained that the plaintiff could not furnish them within the time limit of the contract.

Various letters between the defendant and the Higgins Spring Company, at whose factory plaintiff was having the contract springs manufactured, were offered in evidence. Possibly the fact of the writing of some of these letters might have been admissible as bearing upon the defendant's diligence, but of course they are *res inter alios acta,* and could not be received as evidence of any facts stated in them.

Evidence having been given of the receipt of a letter from the plaintiff, referred to in a letter received in evidence, and that diligent search had been made for that letter, but that it could not be found, offer was made to prove its contents by the testimony of a witness who had seen it. This was excluded, on what theory we do not understand. If the letter itself was material and its loss was established, the foundation for secondary evidence of its contents would seem to have existed. Notice to the plaintiff to produce it was not essential, for there was no reason to suppose that it was in plaintiff's custody, having been written to and received by the defendant.

The court rightly excluded evidence offered to show wilfulness of the plaintiff in its breach of the contract. Such fact was wholly irrelevant. Motive could neither create nor increase its liability in this action, founded upon breach of contract.

A special contention is made that, although plaintiff might not have had knowledge of such facts as to make it contemplate all the results of its breach at the time of the making of the contract in December, still on February 23d following it entered into a new agreement, upon consideration that defendant should refrain from supplying itself with springs elsewhere, that it would deliver all the springs mentioned

in the former contract within thirty days from that date, and that at that time it received certain additional and specific information of the predicament in which failure of delivery would plunge the defendant. Doubtless, if a new and valid agreement was made at that time, it would be material to establish the knowledge which the plaintiff had as affecting its liability for a breach of that agreement, provided any counterclaim had been pleaded for such damages. We find no such counterclaim, however. There is no allegation of a contract later than and different from that confessedly made on December 17th, hence the fact of the communications to plaintiff on February 23d was not relevant, and was rightly excluded.

From the foregoing it is of course obvious that the court also erred in directing a verdict in favor of the plaintiff, denying the defendant all recovery upon its third counterclaim. Evidence had been introduced or offered to establish the breach of the contract, to establish, at least, various efforts on the part of the defendant to minimize the damages resulting from that breach, in the way of seeking to obtain springs both from the plaintiff and from others, and that it had succeeded to some extent. Evidence had also been admitted of certain expenses in so doing, although that as to other expenses had been excluded. There was also evidence certainly tending to establish general damages in the line of impairment of the output of the factory, as above discussed, and the long experience of plaintiff in dealing with factories of this general character, so that, even from the evidence actually admitted, the jury might have found facts to warrant some recovery.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.