Duncan, Respondent, vs. Western Union Telegraph Company, Appellant.

*February 3 — February 23, 1894.*

87  173
89  534

87  173
107  25

*Telegraph company: Mistake in transmitting message: Proximate cause: Evidence.*

In an action against a telegraph company to recover for the death of a horse alleged to have been caused by a mistake in the transmission of a telegram and a consequent delay in procuring a veterinary surgeon, it was a matter of mere guess or conjecture, upon the evidence, whether the horse could have been saved had there been no such delay. *Held,* that a nonsuit should have been granted.

APPEAL from the Circuit Court for *Taylor* County.

This action was brought to recover damages, alleged to have been sustained by the plaintiff by the death of his horse, in consequence of the negligence of the defendant company in transmitting a message for the plaintiff from Westboro, Wis., to Foster Bros., at Eau Claire, Wis. The plaintiff's horse was sick, December 4, 1889, at Westboro, with congestion of the lungs, and, desiring the services of a veterinarian, he delivered to the defendant's agent at that place a message to be transmitted, as follows: "To Foster Bros., Prop'rs Eau Claire House, Eau Claire, Wis.: Please send a good horse doctor on first train. John Duncan." As transmitted and delivered, the word "doctor" was omitted; and on account of the incorrect transmission of the

Duncan vs. Western Union Tel. Co.

message the plaintiff could not get a competent person to treat and attend to his horse within the time necessary to save him; and for want thereof said horse died December 6, 1889,— to the plaintiff's damage, etc. The defendant admitted the error in the transmission of the message, but put in issue the other material allegations of the complaint.

The evidence was to the effect that a veterinary surgeon from Eau Claire could have been secured, so as to reach Westboro early in the morning of the 5th of December, if the message had been correctly transmitted. In the afternoon of the 5th the services of a Dr. Wicker were secured, but the horse died about 1 o'clock on the morning of the 6th. Dr. Wicker testified to visiting the horse; that it had pneumonia; that he never studied medicine or graduated from any college, but practiced when called on, but not continuously. He was allowed to testify that, at the time he saw the horse, he told the plaintiff he could not save him; that the disease had gone too far; that the disease is not necessarily fatal in horses, but a delay of ten or twelve hours makes a great deal of difference. He was asked: "In usual cases in horses afflicted with this disease, if medical aid arrives within fifteen or sixteen hours after the horse is taken sick, do you consider that in time?" He answered: "It will all be owing to the severity of the attack. I have had cases that ran three days without medical aid, that recovered." That it was a very hard question to answer, whether, from the symptoms of the horse as he saw them, if the proper treatment had been administered at 4 o'clock in the morning, the horse could have been saved. He testified that, considering that the horse was taken sick a little before noon of the 4th of December, in an ordinary case of this disease, he would consider that proper treatment by 4 o'clock of the next morning would be in time. That he did not see anything extraordinary in this case from the usual run of cases he had treated. That he would

not swear that the horse could have been saved, and did not think any one would. " That is not what I wished to be understood. I said, in an ordinary case. In some cases horses die pretty quick. He was a very sick horse when I saw him. It was not an attack of acute pneumonia; it had got into the chronic. The disease was set. It must have been there for several hours before I saw him. I made a post mortem examination; found the lungs inflamed and fluid in the chest. As I say, it was complicated with dropsy of the chest and pleurisy. I don't think that all of his complications came onto him all of a sudden. I am not willing to swear that any doctor could have saved him, if he had been there at 4 o'clock in the morning of the 5th. This fluid in the chest accumulates very fast." That a veterinary surgeon would have had a better chance if he had been there at that time than when he arrived.

This is the substance of the testimony to show that the negligence of the defendant was the proximate cause of the damages sustained by the plaintiff. The defendant moved for a nonsuit, on the ground, among others, that there was not sufficient proof that the plaintiff had suffered damage by reason of the defendant's negligence. The motion was denied. The case was submitted to the jury, and a verdict was given for the plaintiff for $150; and from a judgment rendered thereon the defendant appealed.

For the appellant there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*. They contended, *inter alia*, that there must be proof that the circumstances would have been different if the message had been properly delivered. *Cutts v. W. U. Tel. Co.* 71 Wis. 46; *W. U. Tel. Co. v. Kendzora*, 77 Tex. 257. The damages were too remote. *Griffin v. Colver*, 16 N. Y. 489; *Chapman v. W. U. Tel. Co.* 90 Ky. 265; *W. U. Tel. Co. v. Crall*, 39 Kan. 580; *Deslottes v. B. & O. Tel. Co.* 40 La. Ann. 183; 3 Suth. Dam. (1st ed.), 307; *W. U. Tel. Co. v. Cooper*,

71 Tex. 507; *Adams Exp. Co. v. Egbert,* 36 Pa. St. 360; *Lowery v. Tel. Co.* 60 N. Y. 198; *W. U. Tel. Co. v. Hall,* 124 U. S. 444; *Baldwin v. U. S. Tel. Co.* 45 N. Y. 744; *Bodkin v. W. U. Tel. Co.* 31 Fed. Rep. 134; *McClary v. S. C. & P. R. Co.* 3 Neb. 44; *W. U. Tel. Co. v. Smith,* 76 Tex. 253; *Hadley v. Baxendale,* 9 Exch. 341; *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Hibbard v. W. U. Tel. Co.* 33 id. 558.

*E. H. Schweppe,* for the respondent, to the point that the damages were not speculative, cited *W. U. Tel. Co. v. Goodbar,* 7 South. Rep. 214; *W. U. Tel. Co. v. McKibbin,* 114 Ind. 511; 3 Suth. Dam. (1st ed.), 305-6.

PINNEY, J. The evidence in this case was not sufficient to warrant the submission of the issue to the jury, and the motion for a nonsuit ought to have been granted. The witness Wicker testified that when he saw the horse he thought he could not save it; that the disease had gone too far. He had no means of knowing whether it was an ordinary case of pneumonia at the time, in the morning of the 5th, when it is said a veterinary surgeon could have reached Westboro from Eau Claire, had the plaintiff's message been correctly transmitted. Any opinion given by him in that respect, as well as to whether the horse could have then been saved by treatment, was the merest guess or conjecture, without any statement of facts to support or justify it. It is true, he testified that he did not see anything extraordinary in this case from the usual run of cases he had treated. This, to say the least, is singular, in view of his former statement in substance that when he saw the horse it was his opinion that the disease had gone so far that the horse could not be saved. Perhaps he meant that he did not see anything extraordinary in the case, as one that had progressed so far as this one had. However this may be, admitting that a veterinarian would have had a better chance to save the horse if he had been there at

4 o'clock in the morning than at 5 o'clock in the afternoon, when Wicker came, still, it was but a *chance.* There was no competent evidence to show that, at 4 o'clock in the morning, the case was an ordinary case of pneumonia. The most that can be said is that the evidence wholly fails to prove the issue, and affords a foundation only for the merest guess or conjecture, and the jury were left to guess or conjecture at a result which the law requires should have been fairly established by competent evidence. *Marvin v. C., M. & St. P. R. Co.* 79 Wis. 140; *Megow v. C., M. & St. P. R. Co.* 86 Wis. 466. This was error.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.