HILL, Clerk, etc., Appellant, vs. THE AMERICAN SURETY
COMPANY, imp., Respondent.

*February 3 — May 15, 1900.*

Voluntary assignments: Negligence of assignee: Degree of care: Failure
to insure; Burden of proof: Evidence: Opinion as to future con-
duct; Breach of assignee's bond: Remedies: Abatement of actions:
Waiver: Appeal: Bill of exceptions: Action at law: Directions for
judgment.

1. The duty of an assignee for the benefit of creditors ·is that of strict
   obedience to all orders of the court, and, in the absence of express
   direction, to exercise the utmost good faith and at least ordinary
   care and diligence.
2. Where it is a general custom for assignees for the benefit of credit-
   ors to keep the assigned property insured, failure of an assignee to
   use such diligence to procure insurance as would have been exer-
   cised by an ordinarily prudent and diligent man constitutes negli-
   gence, rendering both the assignee and the sureties upon his official
   bond liable for any damages proved to have resulted therefrom.
3. In an action on the official bond of an assignee for the benefit of
   creditors, brought by a creditor to recover for loss occasioned by a
   failure to insure, evidence that the property was of a kind usually
   insured when in the hands of such assignees; that nothing in the
   assignment made insurance more improbable than usual; that the
   time to procure insurance was ample; that the value of the prop-
   erty justified insurance more than sufficient to have covered the
   creditor's claims; and that in all reasonable probability the efforts
   of an ordinarily diligent man would have been effectual to procure
   insurance exceeding such claims,— is *held* to establish plaintiff's
   case *prima facie,* and to cast upon the defendants the burden of
   showing that by due diligence the assignee could not have obtained
   either any insurance or enough to protect plaintiffs from the whole
   of their loss.
4. In such a case hypothetical questions asked insurance agents such as
   " Had the assignee brought you the policies at any time before the
   fire to get your consent to the transfer to him of the insurance,
   would you have given it?" and "Would your company, at any
   time, have written insurance on property in the hands of an as-
   signee?" merely call for the opinion of the witness as to what his
   conduct would have been under circumstances which did not exist,
   and were therefore improper.

5. Where an assignee for the benefit of creditors had turned over the assigned property to a receiver, and had been *functus officio* for some years, and the result of the receiver's disposition of the property had been ascertained, a cause of action on the assignee's bond for negligence in the management of the assigned estate had become complete, and, under sec. 1695, Stats. 1898, could be enforced by creditors in an independent action on the bond; and the objection that there had been no formal settlement of the assignee's account, if such a settlement is a necessary preliminary step to such action, is a matter strictly in abatement, and is waived by an answer on the merits. [Whether, at every stage of the proceedings, individual creditors may maintain an action against an assignee for any act believed to be in derogation of his duty, although the same might properly become an item of charge in his general account, not determined.]

6. The objection that there had been no formal settlement of the assignee's account is not raised by a demurrer on the grounds that the complaint did not state facts sufficient to constitute a cause of action, and that plaintiff had an adequate remedy in the voluntary assignment proceedings. [Whether such objection can be raised at all by demurrer, not determined.]

7. On appeal the supreme court is limited to the bill of exceptions for information as to the proceedings on the trial: the opinion rendered by the trial judge, the reporter's minutes, and depositions cannot be considered unless incorporated therein.

8. Upon reversal of a judgment in an action at law in which a jury trial has been waived, the supreme court is not limited to awarding a new trial as in cases tried by a jury, but, as in equity cases, may exercise the utmost freedom in directing the course to be pursued by the trial court.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

On the 22d of June, 1894, the Enger-Kress Company made a voluntary assignment to E. B. Winterhalter, its vice president, and the defendant *The American Surety Company* became surety on his assignee's bond. The company's business was the manufacture of leather goods in a factory of its own located in North Milwaukee. It had at the time of the assignment about $38,000 of fire insurance. No effort was made by the assignee to secure consent to as-

signment of these policies to him, nor was any attempt made
to obtain insurance upon either plant or contents. On July
7th the factory and contents were substantially destroyed
by fire. Their value was approximately $37,000. Almost
immediately thereafter, at the suit of a judgment creditor,
a receiver of the assignor corporation was appointed, and on
July 21st the court entered an order requiring the assignee
to turn over to that receiver all the assets in his hands, sub-
ject to a claim for his compensation and disbursements while
it had been in his possession. This was done, no account or
report of the assignee's dealings with the property having
been filed, or passed on by the court. His statement of his
charges for compensation and disbursements were made,
and finally allowed by the court, and paid to him by the re-
ceiver. The order for this transfer was predicated on in-
validity of the assignment for the reason that the bond
signed by the defendant surety company did not bear the
certificate required by law of surety companies.

Much evidence was given in support of a uniform custom
of manufacturers to keep their property insured at and in
the vicinity of Milwaukee; also of a very general custom of
assignees and receivers to maintain insurance. Evidence
was also offered as to the ease or difficulty with which in-
surance could have been procured by this assignee had he
made an effort; and that most agents would not have as-
sumed authority without submission to home offices, which
would have required four or five days.

The court found that it was customary for insurance
agents not to write risks on property in the hands of as-
signees without submitting the applications to the home
offices of their companies; "but whether or not the com-
panies would, upon investigation, approve or accept such
applications so submitted, or what proportion thereof would
be so approved or accepted, was not shown by the evidence."
The court further found that: "If the assignee, after the

assignment, had made due and diligent effort and had taken all usual and necessary steps to procure the consent of the several insurance companies which had issued the insurance policies to the transfer to him of said policies and the insurance represented thereby, and had also made due and diligent effort and had taken all usual and necessary steps to procure other policies of insurance or new policies to be written upon said property, he would not have been able to have procured such consent, or to have kept said policies alive, or to have secured other and new or additional insurance prior to the date of said fire. No damage was sustained by said plaintiff by reason of the failure of said assignee to attempt to secure a continuance of the said existing insurance, or to attempt to procure new insurance upon said property." It was quite conclusively proved that he could, in all probability, have obtained some insurance; but neither how much, on the one hand, nor how little, on the other, is established. The court held as matter of law that the assignee was bound to insure if he could do so "readily."

The action was brought by a creditor, without an order of court, in the name of the clerk, to recover of the assignee and said surety company the amount of unpaid claims existing against said corporation,— about $23,000 and interest,— to be collected for the benefit of these creditors. Judgment was entered in favor of the defendant surety company, from which the plaintiff appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles*, and oral argument by *Charles Quarles*.

For the respondent there was a brief by *Miller, Noyes, Miller & Wahl*, and oral argument by *Geo. H. Noyes*. They contended, *inter alia*, that an action upon the bond of an assignee cannot be maintained until after its breach has been determined by the court in the assignment proceedings. . The court having acquired jurisdiction in the assign-

ment proceedings, the statute relating thereto gave exclusive power and authority to that court to try and determine all questions as to the assignee's qualifications, competency, his negligence, misapplication of funds, failure to account therefor, or any breach of duty which he may have committed with respect to the assigned estate. *Lawson v. Stacy*, 82 Wis. 303; *Marathon Co. v. Barnes*, 86 Wis. 663; *Stein v. Benedict*, 83 Wis. 603; *Case v. James*, 90 Wis. 320; *Magnus v. Sleeper*, 69 Wis. 219; *Durr v. Wildish*, 100 Wis. 411; *Sprinkle v. Wallace*, 28 Oreg. 198. There was no duty to insure. Neither the deed of assignment nor the bond required or authorized the assignee to insure or keep insured the property. The assignee must be governed throughout by the terms and provisions of the instrument of assignment, so far as they can be legally pursued. Burrill, Assignments (6th ed.), § 350; *Geisse v. Beall*, 3 Wis. 367–388; 2 Perry, Trusts, § 527; *Burr v. McEwen*, Baldw. C. C. 154; *Lovat v. Leeds*, 31 L. J. Ch. 503; Angell, Insurance (2d ed.), § 73; *De Forest v. Fulton F. Ins. Co.* 1 Hall, 84; *Insurance Co. v. Chase*, 5 Wall. 509; *Page v. Western M. & F. Ins. Co.* 19 La. 49; 1 Phillips, Insurance, 153; *Clark v. Craig*, 29 Mich. 398; *Hamm v. J. Stone & Sons L. S. Co.* 13 Tex. Civ. App. 414; *Bailey v. Gould*, 4 Y. & C. 221; *Estate of Johnson*, 11 Phila. 83.

The following opinion was filed February 27, 1900:

DODGE, J. 1. The first and fundamental question in this case is whether the defendant assignee was guilty of a breach of his official duty in refraining from effort to secure insurance on the building and stock of the manufacturing plant in his possession. Certainly no less degree of care and diligence can be permitted to an assignee than that which is imposed upon the bailee for hire or agent, namely, that of ordinary diligence,— such diligence and care as are exercised by ordinarily prudent persons under like circumstances,—

and the utmost good faith, and to that duty he should be strictly held. It has always been the policy of courts to protect those who, by force of the law, or without their consent, are represented by others in the care of their property. In the case of an assignment the body of creditors are the ones ultimately interested in the preservation and productiveness of the property; upon them falls the loss, and to them results the benefit, of the assignee's management. They cannot direct specific acts, nor, in the main, can they control that management. Hence the duty of the courts to hold the assignee to strict performance, first, of all orders which the court may make as to his conduct, and, secondly, where the court is silent, to the full measure of diligence and fidelity above suggested. Burrill, Assignments (6th ed.), § 410; Smith, Receiverships, § 109; *Litchfield v. White,* 7 N. Y. 438; *In re Dean,* 86 N. Y. 398, 400; *In re Cornell,* 110 N. Y. 351, 357. In this case it is fully proved, and, if not proved, the fact is so well within common knowledge as to justify judicial notice thereof, that ordinarily prudent men, having in possession a large manufacturing establishment such as this was shown to be, keep the same insured against loss by fire to an amount well approaching the real value. It is also proved that assignees and receivers do not customarily pursue a different course, in this respect, from others. By one witness it is said that the custom for assignees to insure is substantially universal; by another, that nine out of ten of them do insure; and by all the witnesses that the custom is general. We cannot doubt, therefore, that it is proved to have been the duty of the defendant assignee to have exercised such diligence to procure insurance upon this plant as would have been exercised by an ordinarily prudent and diligent man. In this duty he absolutely failed, confessedly. He made not the slightest effort to secure insurance, either by the assignment of existing policies or by the procuring of new ones; and

this, too, in despite of express advice and direction from his counsel. He was, then, guilty of negligence in the performance of his duties as assignee, and no reason is apparent why both he and the sureties upon his official bond should not be liable for any damages proved to have resulted therefrom.

As we approach the question of damages, some difficulty is met. It is proved that the property destroyed was worth about $37,000; that the usual amount of insurance upon such property would have been more than enough to satisfy the claims of all the creditors, which aggregate $22,385.89; and that, by reason of the absence of such insurance, the creditors are damnified to that extent. On one hand, it is contended that this showing is sufficient, *prima facie*, to entitle them to recover, and that such recovery can be defeated only by proof that due diligence on the part of the assignee would have been ineffective in procuring either any insurance or some part of the amount necessary for the protection of the creditors; and that the burden of proving this situation rests upon the defendant, who seeks to diminish the apparently natural results of his own negligence. On the other hand, it is contended that the plaintiff must establish that the creditors have actually suffered damage by reason of the negligence of the assignee, which they would not have suffered had he not been so negligent. It is urged that it cannot be said that loss to a creditor is caused by an omission on the part of the assignee of any effort to insure, unless such effort probably would have been successful; or, if successful only in part, the amount of such injury cannot be declared unless the amount of insurance obtainable is established. Unless those facts appear, it is said the injury may as well have resulted from the most diligent conduct as from the most negligent, and the negligence is not shown to be the cause of the injury,— citing *Duncan v. W. U. Tel. Co.* 87 Wis. 173; *Hartstein v. W. U. Tel. Co.* 89 Wis. 531.

In this case, as we read the record, there is no finding upon this subject, for the reason that the court adopted a wrong legal standard for the diligence required of the assignee. *Maldaner v. Smith*, 102 Wis. 30. He held that the duty to insure existed only in case insurance could be *readily* obtained, and then proceeds to find as a fact that, although the assignee had exercised due diligence, he could neither have secured assignment to him of existing policies of insurance nor the issue of others prior to the fire. We think the diligence mentioned in this finding must be understood in the light of the rule of law enunciated by the court. So understood, the court has only found that he could not "readily" have insured. This construction of the finding is made the more certain by the preceding one, where the court finds that it is not established whether any, and, if any, how much, insurance could have been obtained by forwarding applications to the home offices of the insurance companies. Certainly, when local agents have not authority to pass on a risk, or to insure it without submission to their superiors, it is not an effort in excess of ordinary diligence to request such submission.

Being without finding as to whether or not ordinary diligence would have protected plaintiff from loss in whole or in part, we must consider the evidence without the aid of the trial court's decision thereon. On the question of the burden of proof — of the extent to which the injured plaintiff must go, after proving his injury and the defendant's negligence, to establish that the negligence caused the injury *prima facie* in order to throw on the negligent defendant the burden of proving that due diligence would have been ineffectual to prevent the loss in whole or in part — there is much authority in the cases of agents, sheriffs, and others whose standard of duty is the same as that owed by an assignee, namely, the diligence of an ordinarily prudent man. Some of the textbooks and adjudications are the following: Paley, Agency

Hill vs. The American Surety Co.

(3d Am. ed.), 20; Story, Agency, §§ 192, 222, 236, 237; Ewell's
Evans, Agency, *234; Mechem, Agency, § 518; 2 Sedgwick,
Damages, §§ 545, 811, 813, 817; Sutherland, Damages, § 489
et seq.; *Wilson v. Wilson*, 26 Pa. St. 394; *Folsom v. Mussey*, 10
Me. 297; *Storer v. Eaton*, 50 Me. 219; *Strong v. High* (La.),
38 Am. Dec. 195; *Chenowith v. Dickinson*, 8 B. Mon. 156;
*Beardsley v. Davis*, 52 Barb. 159; *First Nat. Bank v. Fourth
Nat. Bank*, 77 N. Y. 320; *S. C.* 89 N. Y. 412; *Talcott v.
Cowdry*, 39 N. Y. Supp. 1076; *Commercial Bank v. Red
River Val. Nat. Bank* (N. D.), 79 N. W. Rep. 859, 866;
*Heater v. Pearce* (Neb.), 81 N. W. Rep. 615; *Backus v. Ames*
(Minn.), 81 N. W. Rep. 766.

Under the most liberal of the rules justified by these au-
thorities as to the quantum of proof necessary to connect
defendant's negligence with plaintiff's loss in the first in-
stance, we are satisfied that in the present case enough was
proved by the plaintiff to establish a *prima facie* liability of
the defendants for the amount claimed. The insurability
of the property, so far as the physical risk went, was estab-
lished beyond controversy; also the practical universality of
experience of assignees to obtain insurance to eighty per
cent. or more of the value of property in their hands, which
would have exceeded plaintiff's claims. Further, those cir-
cumstances were shown to exist which the insurance experts
testified were considered as reducing to the utmost the moral
hazard attending all property *in custodia legis*, and facilitat-
ing insurance thereof, namely, the productiveness of the
property, the absence of protracted or antagonistic litigation,
and its continued occupation by the old owners with intent
to operate, and expectation to save, the plant after satisfy-
ing the creditors, and to continue business. It was also
proved by a preponderance of the evidence that *some* insur-
ance could, within four or five days from date of application,
have been obtained from at least three of the companies
holding policies at the time of the failure; also that, if local

Hill vs. The American Surety Co.

agents were unwilling to assume the authority, a decision could have been had from the general offices of the insurance companies within four or five days. To summarize: The property was of a kind usually insured, and that, too, in the hands of an assignee. Nothing in this assignment made insurance more improbable than usual. The time was ample, and the value justified insurance more than sufficient to have covered plaintiff's claims. In all reasonable probability the efforts of an ordinarily diligent man would have been effectual to procure insurance exceeding $23,000. That suffices to establish plaintiff's case under the authorities above cited. Such *prima facie* case having been established, the burden of proof was on the defendants to establish, either that the assignee's negligence was not injurious at all, or, if at all, for what part of the loss *prima facie* resulting therefrom; either that by due diligence he could not have obtained any insurance, or not enough to protect plaintiff from the whole of the loss.

We incline to the view that the present record does not disclose evidence to overcome the *prima facie* liability established, but, as has already been pointed out, we consider that there is no finding on the question, and we apprehend that injustice might be done in the attempt to finally decide it here. We think it safer, therefore, that the circuit court, in the light of the foregoing statement of the diligence required of the assignee, and in view of the burden of proof resting upon the defendant, should consider and decide, upon the competent evidence already received and such additional evidence as may be offered upon the single question, whether the assignee's negligence in making no efforts to obtain any insurance caused less injury to the plaintiff than the amount of the unpaid claims, and, if so, how much less. Under all of the authorities, plaintiff is entitled to recover at least nominal damages. *Heater v. Pearce* (Neb.), 81 N. W. Rep. 615.

2. Certain errors are assigned on the admission of evidence in response to hypothetical questions. While such error would not, under the rules laid down by this court, work a reversal, yet as the admissibility and competency of the evidence so admitted, and very possibly of further like evidence to be offered, is important in the consideration of the single question to be decided by the circuit court, those assignments of error should receive attention. The objection raised was to questions of which the two following are typical: A fire insurance agent, produced by the defendant, was asked, " Had Mr. Winterhalter brought you these three policies at any time before the fire, to get your consent to the transfer to him of this insurance, would you have given it ? " Question to the secretary of another insurance company: " Would your company, at that time, have written insurance on property in the hands of an assignee ? " Both questions, and many others substantially similar to other witnesses, were answered in the negative. These questions fall squarely within the rule laid down in *Woodworth v. Mills*, 61 Wis. 44, 54, and *Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297, 303, where they were condemned as calling merely for the opinion of the witness as to what his conduct would have been under circumstances which did not exist,— a field altogether too vague for opinion evidence. The probable conduct of a particular individual or corporation is not a subject of expert evidence; it is a subject for the jury or court, in trying the facts, to reach a conclusion on from the general custom, if any, of persons in that trade, profession, or business under like circumstances. The opinion of one as to what he would have done, formed after the event, and after he has discovered whether the act would have proved beneficial or injurious, is too unsafe and unreliable to be received as evidence. The responses to questions like those quoted above, where they were objected to,

Hill vs. The American Surety Co.

should not have been received, and should not be allowed to have weight in the further consideration of the case.

3. It is contended that appellant cannot maintain this action on the assignee's bond until the court having supervision of the assignment proceedings shall have settled a final account and closed the proceedings. The general question is controlled by sec. 1695, Stats. 1898, which provides: "Such bond shall, immediately after its execution, together with a full and true copy of such assignment, be filed by the officer taking the same in the office of the clerk of the circuit court to whom it is executed; and the taking and filing of said bond by said court commissioner or county judge shall be deemed a sufficient approval thereof, and all bonds so taken and filed are hereby declared to be sufficiently approved. Such bond and copy of assignment shall be kept by such clerk in his office, subject at all times to the inspection of all parties interested; and any creditor of the assignor may maintain an action thereon in the name of the obligee at any time for condition broken, and any judgment rendered thereon shall be held and collected for the benefit of the respective creditors of the assignor according to law and the terms and conditions of such assignment. The court may, from time to time, require the assignee to furnish a new or additional bond." This statute is very comprehensive in its terms, but in the present case it is not necessary to decide whether, at every stage of the proceedings, individual creditors may maintain an action against an assignee for any act believed to be in derogation of his duty, although the same may well become an item of charge in his general account. Here we have the assignment entirely closed up, the property turned over by the assignee, and he for some years *functus officio* except for the single act of making the creditors good for the injury imposed on them by his negligence. One essential element of their damage could not

be known until the result of the receiver's disposition of the
property was ascertained.  That being done, all the elements
of their case are capable of trial and decision in an action
on the bond.  Their cause of action is complete.  That being
so, if it were conceded that the formal settlement of the
assignee's account were a necessary preliminary to the com-
mencement of this action, the absence of such step would
be matter merely in abatement.  It would go not to defeat
the cause, but to postpone the commencement of the action,
and must, therefore, be raised by plea in abatement.  The
answer on the merits waived it.  *Lombard v. McMillan*, 95
Wis. 627, 635.

*By the Court.*— Judgment reversed, and cause remanded
for further proceedings in accordance with this opinion.

On a motion for a rehearing counsel for the respondent
contended, *inter alia*, that the action is not maintainable.
The objection that there had been no formal settlement of
the assignee's account was raised by the demurrer.  Such
objection could be as well raised by demurrer as by plea in
abatement.  *Lombard v. McMillan*, 95 Wis. 627–635; and
authorities cited; *Bigelow v. Washburn*, 98 Wis. 556; *Webber
v. Ward,* 94 Wis. 605; *Hooker v. Brandon*, 75 Wis. 8–12.
The complaint alleged that, although the assignee turned
over certain assets to the receiver in pursuance of the order
of the court and received his fees and disbursements up to
that date, "said assignee had never been discharged nor
have his accounts and doings ever been finally allowed or
confirmed by the said court."  The respondent demurred to
said complaint on the ground (1) that it did not state facts
sufficient to constitute a cause of action; (2) that said plaint-
iff had an adequate remedy at law; (3) that said plaintiff
had not the legal capacity to maintain the action; and (4) that
said plaintiff had an adequate and exclusive remedy in the

voluntary assignment proceedings set forth in the complaint. The demurrer was overruled and respondent excepted. This raised the question whether the action on the bond could be maintained, the assignee never having been discharged.

The following opinion was filed May 15, 1900:

DODGE, J.  1. The respondent's argument upon motion for rehearing, while quite extended, presents nothing from the record which was not observed and fully considered by this court as bearing upon the facts of the case.  The quotations from some opinion said to have been rendered by the circuit judge and from reporter's minutes and depositions can hardly be urged upon our attention seriously by the counsel.  However great our confidence in him personally, the law does not permit us to accept his assertions to establish the proceedings at the trial.  We are confined to the bill of exceptions for information on that subject. Were we permitted to inform ourselves from the "opinion" as to the mental processes of the circuit judge, the error involved in the judgment would be only the more apparent, for we should discover that he found the defendant assignee negligent as a matter of fact, and that he did not find as fact either that the old insurance could not have been renewed to the assignee, or that he could not have obtained other insurance, but merely that there was no preponderance of evidence to the affirmative of these propositions. Such a finding would not have supported judgment for defendant in the light of the rule as to the *onus probandi* adopted in our original decision, and since then more elaborated in *Hildebrand v. Carroll*, 106 Wis. 324.  If the views expressed in that opinion persisted, the findings must have been signed without consideration, for they differ widely, in that they ignore the direction to declare the defendant assignee's negligence, and do declare the negative where

they were directed only to express absence of preponderance of evidence to support the affirmative as to possibility of procuring insurance by due diligence.

2. Counsel complains of the grounds on which we disposed of matter urged in abatement of the action, insisting that the demurrer, allowed to be filed after once answering, did raise the objection which we held to have been waived by silence. In thus insisting he apparently confuses two very distinct things. The demurrer alleged as one of its grounds that plaintiff had an adequate and exclusive remedy in the voluntary assignment proceedings. This objection, going, as it would, to the maintenance of any independent action upon the bond, at least while the assignment proceedings are open and pending, we considered and now consider so obviously disposed of by the statute (sec. 1695, Stats. 1898) expressly authorizing independent actions that no discussion further than citation of the statute is necessary. *Boland v. Benson*, 50 Wis. 225. A further objection was urged by respondent's counsel for that, although the assignment proceedings might not be the exclusive forum for the remedy upon the bond, yet that independent action thereon could not be maintained "until after its breach had been determined by the court in the assignment proceedings." This objection, strictly in abatement, was not raised by the demurrer; indeed, it is difficult to see how it could have been, for the statute (sec. 2649) authorizes no such ground; nor was it raised by plea in abatement. To this latter objection was addressed the conclusion of waiver in the former opinion.

3. Counsel for respondent assails the power of this court, upon reversal of a judgment in an action at law, to remand with directions for a partial new trial, citing to us rulings made with reference to jury trials. In such cases the rule is without doubt. Rule XXXII. In dealing with appeals

Hill vs. The American Surety Co.

from judgments rendered upon trials by the court or a referee, however, this court has always exercised the utmost freedom in directing the course of the court below after reversal. *Lemke v. Daegling*, 52 Wis. 500; *Braunsdorf v. Fellner*, 76 Wis. 1; *Patten P. Co. v. Green Bay & M. C. Co.* 93 Wis. 283; *Menz v. Beebe*, 102 Wis. 350; *Gilbert v. Pier*, 102 Wis. 334, 338; *Johnson v. Huber*, 106 Wis. 282. The distinction results from the inability of this court to decide questions of fact in the former class of cases, which does not at all apply to the latter. Indeed, express authority therefor is given by sec. 3070, Stats. 1898. No distinction whatever exists between judgments in suits in equity and in actions at law, where right to jury trial has been waived, as to the manner of consideration, or the form or extent of their correction on appeal. By sec. 3071 we are, by legislation, empowered to reverse in whole or in part, to affirm, or to modify; and the custom has been general to apply the law to the facts as they appear to us, and direct the court below as to its judgment or other further proceeding. Whether the power so to do results from the statute, or from the constitutional devolution of appellate jurisdiction or of general superintending control over inferior courts, is, perhaps, not very material. Its existence, derived from some or all of those sources, cannot, at this late day, be questioned. The policy of this court is, generally speaking, to terminate litigation; to finally conclude, either by affirmance or direction, all issues which have been regularly tried and properly brought before us; and to remand issues for retrial only when necessary to sure and complete justice, yielding, as every policy must, to the constitutional assurance of the right to trial by jury in certain situations. We have no doubt of the existence of the power exercised, nor of the wisdom of the policy adopted, in the judgment rendered in the present case.

We find nothing in respondent's argument meriting further consideration or discussion than was devoted to it upon the original hearing of the appeal.

*By the Court.*— Motion for rehearing denied, with $25 costs.