BLOHOWAK, Appellant, vs. GROCHOSKI, Respondent.

*September 9—September 29, 1903.*

*Trial: Special verdict: Change by court, when justified: Appeal: Remanding for new trial: Watercourses: Evidence.*

1. To justify a court in changing an affirmative answer by the jury to a negative one, such affirmative answer must be contrary to the undisputed credible evidence.
2. The evidence in this case (stated in the opinion) tending to show the existence of a natural watercourse over the plaintiff's land and upon that of the defendant, is *held* sufficient to make the question one for the jury.
3. A stream does not cease to be a watercourse because at a certain point it spreads out and flows for a distance over level land without defined banks before flowing again in a definite channel.
4. Where the trial court changed a special verdict and rendered judgment accordingly, this court, on reversing the judgment upon the ground that such change was unwarranted, may, under sec. 3071, Stats. 1898, remand the cause for a new trial.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

This is an action at law to recover $600 damages for unlawfully and wrongfully filling up an alleged watercourse, with bed and banks and a well-defined channel through which

water flowed during the greater part of the year, immediately below and north of the north line of the plaintiff's premises, described, and thus causing the water to set back upon and overflow the plaintiff's premises. The answer admits that the plaintiff was the owner of the land described, and that the north end thereof adjoined the land of the defendant, but denied the existence of the alleged watercourse or any watercourse. At the close of the trial of such issues the jury returned a special verdict, the first question and answer of which are as follows: "(1) Is there a natural watercourse flowing from the plaintiff's land onto the defendant's land? *Answer.* Yes." The other questions were answered to the effect (2) that about October 15, 1896, the defendant dammed up said watercourse so as to cause the water to back up onto the plaintiff's land, (3) and by reason of said back water damaged the plaintiff's lands to the extent of $2 per acre for fifteen acres, and for five years, $150. Thereupon the plaintiff moved the court for judgment upon the special verdict, and the defendant moved the court to strike out the answer "Yes" to the first question, and insert in lieu thereof "No," which motion was granted. The court thereupon ordered that the answer of the jury to the first question be changed from "Yes" to "No," as indicated, and that upon the verdict so amended the complaint as amended be dismissed, and that the defendant recover his costs and disbursements in this action, and ordered judgment to be entered accordingly. From the judgment so entered the plaintiff appeals.

For the appellant there was a brief by *Calkins & McGruer,* and oral argument by *L. A. Calkins.*

*N. J. Monahan,* for the respondent.

CASSODAY, C. J. This is an action at law triable by jury as a matter of right. This being so, the order of the trial court changing the answer of the jury to the first question from the affirmative to the negative can only be sustained

on the ground that the finding of the jury was contrary to the undisputed credible evidence. In granting the motion of the defendant to so change the verdict the trial court filed a carefully written opinion, reviewing the evidence, and reached the conclusion that the water complained of was mere surface water and did not have the essentials of a watercourse, as defined by the authorities. That court, having heard the witnesses, was undoubtedly in a better position to determine the preponderance of the testimony and the weight of the evidence than this court. Had this been an equitable action and the verdict merely advisory, this court would undoubtedly have felt bound by the action of the trial court. The same is true if this case had been tried by the court without a jury. So, even in jury cases, the trial court has a broad discretion in setting aside verdicts as against the preponderance of the evidence, and granting a new trial. *Schillinger v. Verona,* 85 Wis. 595, 55 N. W. 1040, and cases there cited; *Farley v. C., M. & St. P. R. Co.* 89 Wis. 206, 61 N. W. 769. But to justify a court in directing a verdict or changing the answer of the jury from the affirmative to the negative, as here, the finding of the jury must be contrary to the undisputed credible evidence. In determining whether such verdict was contrary to the undisputed evidence, the trial court, as well as this court, was bound to consider the evidence in support of the verdict in the most favorable light it would legitimately bear. *Renne v. U. S. L. Co.* 107 Wis. 320, 83 N. W. 473, and cases there cited. So considered, can we say that the evidence in behalf of the plaintiff is insufficient to sustain the finding of the jury?

To appreciate the evidence, the general situation should be considered. The plaintiff and defendant each own eighty acres of land, together constituting the W. half of the E. half of section 13, the plaintiff owning the south eighty and the defendant the north eighty. One Jensen owns the eighty immediately east of the plaintiff's land, and on the southeast

corner of that eighty, and about forty rods from the plaint-
iff's land, there is a large willow swamp, extending south.
onto section 24. That swamp is from thirty to forty rods
wide from east to west, and about one hundred rods long from.
north to south. There is also a small swamp on Rasmussen's
land immediately west of the south half of the plaintiff's
land. About forty rods north of the plaintiff's land, and a
little west of the east line of the defendant's land, is a small.
pond, and about fifty rods northwesterly from that there is a
still larger pond on the defendant's land. It is conceded that
the water from the large swamp drains off westerly and north-
erly onto the plaintiff's land, and thence onto the defendant's.
land, and also in a southeasterly direction from the portion
of that swamp on section 24. Such is the general situation.
It is stated by the trial judge, in effect, that some twenty-five
or thirty years ago that large willow swamp extended north-
westerly across the land now owned by the plaintiff, and
nearly half way across the defendant's south forty, and to the·
small pond, and that the water in part from the large willow
swamp drained off north into that small pond, and from.
thence northwesterly into the large pond, mentioned, and·
from thence north to a creek, and at times it ran off in such
quantities and with such rapidity during several months of
the year as to form quite a stream between the large pond
and the creek; that while the timber was standing and the·
soil uncultivated the water would stand in the large willow
swamp during the greater part of each season, and in very·
wet seasons the water would drain into and run out of the·
pond during the whole season; that after the timber was cut
from most of the land in the two sections mentioned, and the·
land became cultivated except in a few spots where the timber
had not been cut, the water was much more absorbed and less
water was drained onto the low ground, and the same more·
quickly disappeared by being drawn off, absorbed, and evap-
orated; that the result was that, with the exception of one or·

two acres, the land in section 13, west of the plaintiff's land,. became and was fit for cultivation; that the natural drainage of about 900 acres was into the basin constituting the original bed of the big willow swamp; that there never was, however, any channel from the big willow swamp to the small pond, but that the water drained across the plaintiff's land into the swamp and thence into the small pond through furrows and ditches constructed by the plaintiff; that there are places south and west of the swamp where in times of melting snow and heavy rains the water runs towards and into the swamp in such quantities as to form streams; that furrows or depressions are left through the field for such flow, which are bridged when crossed by the highway; that none of the water flowing into the swamp comes from living springs, but is surface water; that the defendant dammed up the northern end or outlet of the small pond, and thus retarded the natural flow of the water, and damaged the plaintiff's land.

Such is a general summary of the situation as given by the learned trial judge. There is evidence tending to prove that the water came onto the plaintiff's land from surrounding farms, in the first place from rains and snows, and perhaps from springs, and ran all over the flats, and gathered in the middle of the flats in one corner at the plaintiff's north line; that several years ago the plaintiff dug a ditch three or four feet wide and one foot deep to better drain his land, although the water would flow off without it, but not as well; that before the ditch was dug the water ran from the big swamp down onto the plaintiff's land, and over and upon the defendant's land; that the water flows now in the ditch for several months in the year, the same as before the ditch was dug, but faster, and it is seldom dry, even in dry weather; that the plaintiff's land is a very little higher than the defendant's land; that the creek flowed all the time between the two ponds; that the water from the swamps emptied into the small pond or swale hole which contained water the year round;

that where the water flows from the plaintiff's land onto the defendant's land it is flat—three or four rods wide where it crosses the line; that when the small pond is full the water extends up to the plaintiff's land; the plaintiff's ditch stops at his north line, and from there the water flows north over the flat to the small pond; that there was formerly a creek running from the west onto the plaintiff's land, and also from the southeast onto the plaintiff's land—then about eight feet wide—with banks and fish in it, which flowed from the plaintiff's land crossing the line near the plaintiff's northeast corner, and that such creek had a bridge across it, but there is no creek there now; that the ground where it was has been plowed and filled up, and there is dirt and stuff where the natural watercourse was, but down below it was never touched with a plow, because there was water there all the time— water there at the time of the trial—from the defendant's dam up to where it was plowed. Of course, there was much evidence tending to prove that there was no watercourse, and undoubtedly the trial court regarded such evidence as controlling. But can we say, and was the trial court justified in saying, as a matter of law, that it appears from the undisputed credible evidence that there was no watercourse flowing from the big swamp to the small pond—from the plaintiff's land onto the defendant's land?

It is sometimes difficult to distinguish between a watercourse and mere surface water. Much may depend upon soil and other surroundings and conditions. It is well known that certain Western streams—some marked as rivers upon the map—have quite extended sections which for months are perfectly dry. In defining a watercourse, Chief Justice Dixon said:

"There must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed, sides, or banks, and usually discharge itself into some

other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes." *Hoyt v. Hudson,* 27 Wis. 661.

That case was followed in *Eulrich v. Richter,* 37 Wis. 226, where the facts were quite similar to the case at bar, and where the court directed a verdict. But the judgment was reversed, and a new trial ordered, because "the facts of the case are not so clear and undisputed as to warrant the court in withdrawing from the jury the question whether the *locus in quo* was a natural watercourse." *Id.* 37 Wis. 227, 230. So this court has held, in effect, that streams having their origin in the overflow of a river or other watercourse, by reason of unusual freshets, although they had no well-defined channels or banks, but spread widely over the intervening ground, were, nevertheless, watercourses. *Spelman v. Portage,* 41 Wis. 144; *Barden v. Portage,* 79 Wis. 133, 48 N. W. 210. These cases were followed in *Case v. Hoffman,* 84 Wis. 445, 446; *S. C.* 100 Wis. 323, 75 N. W. 945. It has been held in Indiana that "water which has a definite source in a spring, and takes a definite course, is a watercourse, which cannot be lawfully diverted from its natural channel so as to injure another's land, although at a certain point it spreads over marshy ground, without a defined channel, where it again flows in such a channel." *Mitchell v. Bain,* 142 Ind. 605, 42 N. E. 230.

"In an action for diverting a brook from the plaintiff's land" in a Massachusetts case, "it appeared that, at a point on the defendant's land below the place of the alleged diversion, the water ceased to flow between defined banks, spread itself out several rods wide, and ran so, over the surface of the ground, for five rods, to the plaintiff's land, across which it spread, and ran for seven rods in like manner, and then began to flow again in a defined channel, which conducted it into a river. Held, that the brook did not cease to be a natural watercourse on the plaintiff's land, and that he could maintain the action." *Macomber v. Godfrey,* 108 Mass. 219.

Mr. Gould states the rule applicable thus:

"A stream does not cease to be a watercourse and become mere surface water because at a certain point it spreads over a level meadow several rods in width, and flows for a distance without defined banks before flowing again in a definite channel." Gould, Waters (3d ed.) § 264, citing numerous cases in support of the text.

Quite similar language is used in 28 Am. & Eng. Ency. of Law, 944–946. Within the rules of law stated, the evidence is certainly sufficient to authorize a finding that twenty-five or thirty years ago there was a watercourse from the big swamp onto the plaintiff's land, and from thence onto the defendant's land, and into the small pond; and, although the flow of water has been much less since the timber has been cut off and the land cultivated, still we are constrained to hold that the credible evidence was sufficient to take the case to the jury on the first question submitted.

The conclusion reached raises a question as to what should be the mandate of this court. Shall it be with direction to enter judgment upon the verdict or for a new trial? The statute declares that "upon an appeal from a judgment" this court "may reverse, affirm, or modify the judgment . . . as to any and all of the parties, and may, if necessary *or proper, order a new trial.*" Sec. 3071, Stats. 1898. This court held several years ago that this power given by statute "to affirm, reverse, or modify a judgment in part, and order a new trial, necessarily confers the power upon this court to order a new trial as to the part of the judgment reversed." *Braunsdorf v. Fellner,* 76 Wis. 18, 45 N. W. 97. In a late case it is said that, under the power given by that section, the custom of this court "has been generally to apply the law to the facts as they appear to us, and direct the court below as to its judgment or other further proceeding." *Hill v. Am. Surety Co.* 107 Wis. 34, 81 N. W. 1024, 82 N. W. 691. It is there further said, among other things, that "the policy

of this court is . . . to remand issues for retrial only when necessary to sure and complete justice, yielding, as every policy must, to the constitutional assurance of the, right to trial by jury in certain situations." *Id.* The motion of the defendant was to strike out the affirmative answer to the first question, and insert in lieu thereof a negative answer. The trial court certainly had the discretionary power to set aside the verdict as against the clear preponderance of the evidence and grant a new trial. This is abundantly shown by cases cited at the beginning of this opinion. But no such motion was made. The finding of the trial court that the verdict of the jury was contrary to the undisputed evidence, however, makes it certain that in the judgment of that court the verdict should not be allowed to stand. The term at which the cause was tried has passed by, so that the trial court is not now in a position to exercise its discretionary power. To allow the verdict to stand under such circumstances would be doing an injustice to the parties and in disregard of the convictions of the trial court. Under the statute we are convinced that we have the power to order a new trial, and that it is our duty to do so.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.